| | |
|---|---|
| Denisse O. Gastélum, SBN 282771 | Christian Contreras, SBN 330269 |
| **GASTÉLUM LAW, APC** | **LAW OFFICES OF CHRISTIAN CONTRERAS** |
| **A PROFESSIONAL CORPORATION** | **PROFESSIONAL LAW CORPORATION** |
| 3767 Worsham Ave. | 360 E. 2nd St., 8th Floor |
| Long Beach, California 90808 | Los Angeles, California 90012 |
| Tel: (213) 340-6112 | Tel: (323) 435-8000 |
| Fax: (213) 402-8622 | Fax: (323) 597-0101 |
| Email: dgastelum@gastelumfirm.com | Email: CC@Contreras-Law.com |

Attorneys for Plaintiffs,
ESTATE OF MARIO SOLIS, by and through successor in interest, Sara Solis; SARA SOLIS, individually

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ESTATE OF MARIO SOLIS, by and through successor in interest, Sara Solis; SARA SOLIS, individually, | **CASE NO.: 5:23-cv-00989-HDV-SP** |
| | *[Assigned to the Hon. Hernan D. Vera, District Judge; Referred to the Hon. Sheri Pym, Magistrate Judge]* |
| Plaintiffs, | |
| v. | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; MARIO CORREA; DONALD MILLS; HOWARD MCNEIL; CHARLES TANGER; PATRICK LINDO; ALAN DEWIT; THOMAS WALKER; JAMES GRIESENGER; SPENCER RUSTAD; JUSTIN WILLIAMS; JESSEE DEVERA; AARON PEREZ; SHIRLEY BAUTISTA; JUNE DORESTIN; JOANNA RIOS-MONTOYA; SARAH PUGH; HOA TRUC VU; and DOES 1 through 10, individually, jointly and severally, | 1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983); |
| | 2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983); |
| | 3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983); |
| | 4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983); |
| | 5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983); |
| | 6. Negligence – Wrongful Death; |
| | 7. Negligence – Medical Malpractice; |
| | 8. Violation of California Government Code §845.6; |
| | 9. Violation of California Civil Code §52.1 (Tom Bane Act); |
| Defendants. | 10. Intentional Infliction of Emotional Distress; |
| | 11. Declaratory Relief (28 U.S.C. § 2201) |
| | **DEMAND FOR JURY TRIAL** |

1

## COMPLAINT FOR DAMAGES

**COME NOW** Plaintiffs ESTATE OF MARIO SOLIS, by and through successor in interest, Sara Solis; and SARA SOLIS, individually, and allege as follows:

## I.

## INTRODUCTION

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of pretrial detainee Mario Solis at the Riverside County Sheriff's Department, Cois M. Byrd Detention Center on September 3, 2022. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.



2.      Mario Solis was the loving son of Sara Solis, and the caring brother to his four (4) siblings.  He is described by his family as being very affectionate and attentive to his family's needs.  Sara tenderly recalls Mario helping her put her shoes on in the mornings and kissing her goodbye before her workday began.  In the evenings, Mario always made sure to check-in with her: *"¿Cómo te fue? ¿Quires algo? Descansa, madre. Te am*o."[1]  To this day, Sara regrets not being able to say goodbye to her beloved son and is haunted by the fact that for six (6) whole days she was not aware that her dear son had passed away.  This, due to the Riverside County Sheriff's Department's delay in notifying the family. Mario's death has been a profound and unimaginable loss to his family.  At the time of

---

[1] English translation: "How did it go? Do you want something? Rest, mother. I love you."

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  Mario's death, he left behind his mother and his four (4) siblings. Mario was only 31

2  years old when he passed away.

3      3.    In 2022, eighteen (18) individuals died while incarcerated at the

4  Riverside County Jails, the highest number for the County in the last fifteen (15)

5  years.  In response to these alarming numbers, the California Department of Justice

6  launched an investigation into the Riverside County Sheriff's Department's

7  unconstitutional patterns and practices resulting in the record-breaking in-custody

8  deaths.  The raw data and the per capita data make clear that the Riverside County

9  Jails are a death sentence for any pretrial detainee.

10     4.    Long before Mario Solis's death, each of the individually named

11 defendants from the County of Riverside and the Riverside County Sheriff's

12 Department knew that there existed a great indifference to the safety and protection

13 of the inmates who were in the government's custody within the Riverside County

14 correctional facilities, including Cois M. Byrd Detention Center, Robert Presley

15 Detention Center, Larry D. Smith Correctional Facility, John J. Benoit Detention

16 Center and the Blythe Jail.

17     5.    The individuals named in the present lawsuit were repeatedly put on

18 notice of the great dangers which existed within the Riverside County correctional

19 facilities through the long history of in-custody deaths; the inmate-on-inmate violence

20 which permeated the jails; the record-breaking amount of fentanyl overdoses

21 throughout all Riverside County correctional facilities; the federal class action

22 *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D.

23 Cal.)(hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's

24 Department custody,  medical and mental health staff's deliberate indifference to the

25 safety and protection of inmates; the warnings from neutrally-selected experts

26 regarding the Riverside County Sheriff's Department's custody and medical staff's

27 failures amounting to constitutional violations; a court ordered Consent Decree

28 directing the Riverside County Sheriff's Department to implement a Remedial Plan to

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  meet the minimum level of health care necessary to fulfill the Riverside County
2  Sheriff's Department's obligations under the Eighth and Fourteenth Amendments;
3  and through a voluntarily entered Settlement Agreement which required that the
4  Riverside County Sheriff's Department remedy all of the deficiencies addressed in
5  the *Gray* class action.

6      6.      Despite this long history of complete disregard to inmate safety and
7  protection, each of the individually named defendants in this lawsuit deliberately
8  failed to take even modest actions to prevent in-custody deaths at the Riverside
9  County correctional facilities.  Thus, by the time Mario Solis was taken into custody
10  and placed at the Cois M. Byrd Detention Center, the jail was infested with endemic,
11  ongoing and unabated risks of injury or death to inmates – risks which indeed
12  resulted in Mario Solis's death on September 3, 2022.

## II.

## JURISDICTION AND VENUE

15      7.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the
16  Fourth and Fourteenth Amendments to the United States Constitution, and the laws
17  and Constitution of the State of California. Jurisdiction is conferred upon this Court
18  by 28 U.S.C. §§ 1331 and 1343.

19      8.      This Court has the authority to grant the requested declaratory relief
20  pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57,
21  including pursuant to the Court's inherent equitable powers.

22      9.      Venue is proper within the Central District of California pursuant to 28
23  U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the
24  events and omissions giving rise to Plaintiffs' claims occurred within this district.

## III.

## PENDANT CLAIMS

27      10.     Plaintiffs have complied with the California Tort Claims Act
28  requirements with respect to their claims arising under state law.

4

**SECOND AMENDED COMPLAINT FOR DAMAGES**

11.    With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

**IV.**

**PARTIES**

**A. Plaintiffs**

12.    Decedent Mario Solis was 31 years old when he passed away on September 3, 2022.  He was a brother to his four (4) siblings and the natural born son of Sara Solis. At the time of his death, he was a pretrial detainee who resided in the County of Riverside, California. The claims made by Plaintiff ESTATE OF MARIO SOLIS, are brought by the successor in interest, Sara Solis.

13.    Plaintiff SARA SOLIS, is and was, at all times relevant hereto, the natural mother of decedent Mario Solis, and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent Mario Solis on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

**B. Defendants**

14.    Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees,

1  including RCSD employees and the Correctional Health Services (hereinafter also

2  "CHS") employees, complied with the laws and the Constitutions of the United States

3  and of the State of California.  Defendant COUNTY, through RCSD and CHS, is and

4  was responsible for ensuring the protection and safety of all persons incarcerated at

5  the RCSD correctional facilities, including the Cois M. Byrd Detention Center

6  (hereinafter "CBDC"), Robert Presley Detention Center (hereinafter "RBDC"), Larry

7  D. Smith Correctional Facility (hereinafter "LSCF"), John J. Benoit Detention Center

8  (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

9      15.    Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times

10  mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of

11  Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails.

12  As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening,

13  training, retention, supervision, discipline, counseling, and control of all COUNTY

14  Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by

15  law with oversight and administration of the COUNTY Jails, including ensuring the

16  safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was

17  responsible for the promulgation of the policies and procedures and allowance of the

18  practices/customs pursuant to which the acts of the COUNTY Jails alleged herein

19  were committed. Defendant SHERIFF BIANCO is being sued in his individual and

20  official capacities.

21      16.    Defendant EDWARD DELGADO ("DELGADO"), at all times

22  mentioned herein, was employed by Defendant COUNTY as the Corrections

23  Assistant Chief of the COUNTY Jails, including the CBDC, for the COUNTY, and

24  he was acting within the course and scope of that employment. In that capacity,

25  Defendant DELGADO was a policy making official for the COUNTY OF

26  RIVERSIDE. During the relevant time period, Defendant DELGADO was

27  responsible for the  general management and control of the COUNTY Corrections

28  Operations, with primary authority and responsibility for the operations, staff

assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

17.    Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant KRACHMER was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant KRACHMER was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate to the Corrections Assistant Chief, Defendant EDWARD DELGADO. Defendant KRACHMER is being sued in his individual capacity.

18.    Defendant DAVID HOLM (hereinafter also "HOLM") is and was at all times relevant herein the Corrections Captain at CBDC, one of the highest-level supervisory positions. During the relevant time period, Defendant HOLM was the Corrections Captain at CBDC, and was primarily responsible for assisting the Sheriff-Coroner with oversight and administration of the CBDC, including ensuring the safety of the inmates housed therein. As Corrections Captain, Defendant HOLM was responsible for supervision of RCSD and CHC employees and/or agents at the CBDC, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD and CHC's employees alleged herein were committed. Defendant HOLM also directly supervised Defendant DOES 9 and 10. Defendant HOLM is being sued in his individual capacity.

19.    Defendant PATRICK LINDO, at all times mentioned herein, was employed by Defendant COUNTY as a Watch Commander at the CBDC, one of the

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  highest-level supervisory positions.  During the relevant time period, Defendant

2  LINDO was the Watch Commander at CBDC, and was primarily responsible for

3  assisting the Corrections Captain with oversight and administration of the CBDC,

4  including ensuring the safety of the inmates housed therein. As the Watch

5  Commander, Defendant LINDO was responsible for supervision of RCSD custody

6  staff, CHS staff, and/or agents at the COUNTY Jails, and specifically CBDC, and for

7  the promulgation of the policies and procedures and allowance of the

8  practices/customs pursuant to which the acts of the RCSD custody staff and CHS

9  medical staff alleged herein were committed. Defendant LINDO also directly

10  supervised Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL

11  and DOES 1 through 6. At all times mentioned herein, Defendant was acting within

12  the course and scope of that employment. The present defendant is sued in his

13  individual capacity for damages. At all times relevant hereto, the present defendant

14  was acting under the color of law.

15      20.    Defendant CHARLES TANGER, at all times mentioned herein, was

16  employed by Defendant COUNTY as a Blue Team Sergeant at the CBDC, one of the

17  highest-level supervisory positions.  During the relevant time period, Defendant

18  TANGER was the Blue Team Sergeant at CBDC, and was primarily responsible for

19  assisting the Corrections Captain and the Watch Commander with oversight and

20  administration of the CBDC, including ensuring the safety of the inmates housed

21  therein. As the Blue Team Sergeant, Defendant TANGER was responsible for

22  supervision of RCSD custody staff, CHS staff, and/or agents at the COUNTY Jails,

23  and specifically CBDC, and for the promulgation of the policies and procedures and

24  allowance of the practices/customs pursuant to which the acts of the RCSD custody

25  staff and CHS medical staff alleged herein were committed. Defendant TANGER

26  also directly supervised Defendants MARIO CORREA, DONALD MILLS,

27  HOWARD MCNEIL and DOES 1 through 6. At all times mentioned herein,

28  Defendant was acting within the course and scope of that employment. The present

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1    defendant is sued in his individual capacity for damages. At all times relevant hereto,
2    the present defendant was acting under the color of law.

3        21.    Defendant MARIO CORREA, at all times mentioned herein, was
4    employed by Defendant COUNTY as a corrections deputy at the RCSD, including
5    the CBDC, and was acting within the course and scope of that employment. At all
6    times mentioned herein, Defendant CORREA was assigned to work at the B-Pod
7    Dayroom 3 of the Administrative Segregation Housing Module within the CBDC,
8    and was responsible for carrying out RCSD policies and procedures and for ensuring
9    the safety of inmates at the Jail. Defendant CORREA was assigned to work as a floor
10   deputy on the evening of September 2, 2022 and into the early morning hours of
11   September 3, 2022, when Mario Solis committed suicide. The present defendant is
12   sued in his individual capacity for damages. At all times relevant hereto, the present
13   defendant was acting under the color of law.

14       22.    Defendant DONALD MILLS, at all times mentioned herein, was
15   employed by Defendant COUNTY as a corrections deputy at the RCSD, including
16   the CBDC, and was acting within the course and scope of that employment. At all
17   times mentioned herein, Defendant MILLS was assigned to work at the B-Pod
18   Dayroom 3 of the Administrative Segregation Housing Module within the CBDC,
19   and was responsible for carrying out RCSD policies and procedures and for ensuring
20   the safety of inmates at the Jail. Defendant CORREA was assigned to work as a floor
21   deputy on the evening of September 2, 2022 and into the early morning hours of
22   September 3, 2022, when Mario Solis committed suicide. The present defendant is
23   sued in his individual capacity for damages. At all times relevant hereto, the present
24   defendant was acting under the color of law.

25       23.    Defendant HOWARD MCNEIL, at all times mentioned herein, was
26   employed by Defendant COUNTY as a corrections deputy at the RCSD, including
27   the CBDC, and was acting within the course and scope of that employment. At all
28   times mentioned herein, Defendant MILLS was assigned to work at the B-Pod

SECOND AMENDED COMPLAINT FOR DAMAGES

1   Dayroom 3 of the Administrative Segregation Housing Module within the CBDC,

2   and was responsible for carrying out RCSD policies and procedures and for ensuring

3   the safety of inmates at the Jail. Defendant HOWARD MCNEIL was assigned to

4   work as a floor deputy on the evening of September 2, 2022 and into the early

5   morning hours of September 3, 2022, when Mario Solis committed suicide. The

6   present defendant is sued in his individual capacity for damages. At all times relevant

7   hereto, the present defendant was acting under the color of law.

8        24.    Defendant ALAN DEWIT, at all times mentioned herein, was employed

9   by Defendant COUNTY as a senior corrections deputy at the RCSD, and was acting

10  within the course and scope of that employment. At all times mentioned herein,

11  Defendant DEWITT was assigned to work within the Classification Unit of the

12  COUNTY Jails, and was responsible for carrying out RCSD policies and procedures

13  and for ensuring the safety of inmates at the Jail through the proper housing and

14  classification of the inmates at the COUNTY Jails. The present defendant is sued in

15  his individual capacity for damages. At all times relevant hereto, the present

16  defendant was acting under the color of law.

17       25.    Defendant THOMAS WALKER, at all times mentioned herein, was

18  employed by Defendant COUNTY as a sergeant at the RCSD, and was acting within

19  the course and scope of that employment. At all times mentioned herein, Defendant

20  THOMAS WALKER was assigned to work within the Classification Unit of the

21  COUNTY Jails, and was responsible for carrying out RCSD policies and procedures

22  and for ensuring the safety of inmates at the Jail through the proper housing and

23  classification of the inmates at the COUNTY Jails. The present defendant is sued in

24  his individual capacity for damages. At all times relevant hereto, the present

25  defendant was acting under the color of law.

26       26.    Defendant JAMES GRIESENGER, at all times mentioned herein, was

27  employed by Defendant COUNTY as a sergeant at the RCSD, and was acting within

28  the course and scope of that employment. At all times mentioned herein, Defendant

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  JAMES GRIESENGER was assigned to work within the Classification Unit of the

2  COUNTY Jails, and was responsible for carrying out RCSD policies and procedures

3  and for ensuring the safety of inmates at the Jail through the proper housing and

4  classification of the inmates at the COUNTY Jails. The present defendant is sued in

5  his individual capacity for damages. At all times relevant hereto, the present

6  defendant was acting under the color of law.

7      27.    Defendant SPENCER RUSTAD, at all times mentioned herein, was

8  employed by Defendant COUNTY as a sergeant at the RCSD, and was acting within

9  the course and scope of that employment. At all times mentioned herein, Defendant

10 SPENCER RUSTAD was assigned to work within the Classification Unit of the

11 COUNTY Jails, and was responsible for carrying out RCSD policies and procedures

12 and for ensuring the safety of inmates at the Jail through the proper housing and

13 classification of the inmates at the COUNTY Jails. The present defendant is sued in

14 his individual capacity for damages. At all times relevant hereto, the present

15 defendant was acting under the color of law.

16     28.    Defendant JUSTIN WILLIAMS, at all times mentioned herein, was

17 employed by Defendant COUNTY as an investigator at the RCSD, Corrections

18 Central Investigations Bureau, and was acting within the course and scope of that

19 employment. At all times mentioned herein, Defendant WILLIAMS was assigned to

20 investigate the death of Mario Solis., and was responsible for carrying out RCSD

21 policies and procedures pertaining to the RCSD's internal investigations into in-

22 custody deaths. Defendant WILLIAMS was initially assigned to work as an

23 investigator and continued to be the lead investigator on behalf of the RCSD relating

24 to Mr. Solis' death, and continued in that position until Defendant WILLIAMS

25 provided the RCSD supervisors and policymakers with his final disposition.  The

26 present defendant is sued in his individual capacity for damages. At all times relevant

27 hereto, the present defendant was acting under the color of law.

28 ///

SECOND AMENDED COMPLAINT FOR DAMAGES

29.     Defendant JESSE DEVERA, M.D. (hereinafter also "DEVERA"), was at all times mentioned herein a treating psychiatrist for Mario Solis in the COUNTY Jails employed by the COUNTY Correctional Health Services, and was responsible for providing competent mental health and medical care, treatment and follow-up care to Mario Solis. Defendant DEVERA is sued in his individual capacity.  At all times relevant hereto, this Defendant was acting in the course and scope of his/her employment with Defendants COUNTY OF LOS ANGELES and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and this Defendant was acting under the color of law.

30.     Defendant AARON PEREZ (hereinafter also "AARON PEREZ"), was at all times mentioned herein the Behavioral Health Supervisor in charge of overseeing the medical care and treatment for Mario Solis in the COUNTY Jails and was employed by the COUNTY Correctional Health Services, and was responsible for providing competent mental health and medical care, treatment and follow-up care to Mario Solis. Defendant AARON PEREZ is sued in his individual capacity. At all times relevant hereto, this Defendant was acting in the course and scope of his/her employment with Defendants COUNTY OF LOS ANGELES and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and this Defendant was acting under the color of law.

31.     Defendant SHIRLEY BAUTISTA was at all times mentioned herein a treating medical professional for Mario Solis in the COUNTY Jails and was employed by the COUNTY Correctional Health Services as an Institutional Nurse, and was responsible for providing competent mental health and medical care, treatment and follow-up care to Mario Solis. This Defendant is sued in this Defendant's individual capacity. At all times relevant hereto, this Defendant was acting in the course and scope of his/her employment with Defendants COUNTY OF LOS ANGELES and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and this Defendant was acting under the color of law.

SECOND AMENDED COMPLAINT FOR DAMAGES

32.     Defendant JUNE DORESTIN was at all times mentioned herein a treating medical professional for Mario Solis in the COUNTY Jails and was employed by the COUNTY Correctional Health Services as a Clinical Therapist, and was responsible for providing competent mental health and medical care, treatment and follow-up care to Mario Solis. This Defendant is sued in this Defendant's individual capacity. At all times relevant hereto, this Defendant was acting in the course and scope of his/her employment with Defendants COUNTY OF LOS ANGELES and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and this Defendant was acting under the color of law.

33.     Defendant JOANNA RIOS-MONTOYA was at all times mentioned herein a treating medical professional for Mario Solis in the COUNTY Jails and was employed by the COUNTY Correctional Health Services as a Behavioral Health Therapist, and was responsible for providing competent mental health and medical care, treatment and follow-up care to Mario Solis. This Defendant is sued in this Defendant's individual capacity. At all times relevant hereto, this Defendant was acting in the course and scope of his/her employment with Defendants COUNTY OF LOS ANGELES and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and this Defendant was acting under the color of law.

34.     Defendant SARAH PUGH was at all times mentioned herein a treating medical professional for Mario Solis in the COUNTY Jails and was employed by the COUNTY Correctional Health Services as a Registered Nurse, and was responsible for providing competent mental health and medical care, treatment and follow-up care to Mario Solis. This Defendant is sued in this Defendant's individual capacity. At all times relevant hereto, this Defendant was acting in the course and scope of his/her employment with Defendants COUNTY OF LOS ANGELES and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and this Defendant was acting under the color of law.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

35.    Defendant HOAI TRUC VU was at all times mentioned herein a treating medical professional for Mario Solis in the COUNTY Jails and was employed by the COUNTY Correctional Health Services as an Institutional Nurse, and was responsible for providing competent mental health and medical care, treatment and follow-up care to Mario Solis. This Defendant is sued in this Defendant's individual capacity. At all times relevant hereto, this Defendant was acting in the course and scope of his/her employment with Defendants COUNTY OF LOS ANGELES and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and this Defendant was acting under the color of law.

36.    Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF BIANCO, DELGADO, KRACHMER and HOLM will hereinafter be referred to as the COUNTY DEFENDANTS.

37.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

38.    The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the RCSD and the COUNTY Correctional Health Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through10

1   were and still are residents of the County of Riverside, California. DOES 1 through 10

2   are sued in both their individual and official capacities.

3       39.    At all relevant times, DOES 7 and 8 were managerial, supervisorial,

4   training, and/or policymaking employees of Defendant COUNTY Correctional Health

5   Services. At the time of the incident, DOES 7 and 8 were acting under color of law

6   within the course and scope of their duties as employees for the COUNTY

7   Correctional Health Services. They had supervisorial authority over DOES 1-10, and

8   the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7

9   and 8 were acting with the complete authority and ratification of their principal,

10  Defendant COUNTY.

11      40.    At all relevant times, DOES 9 and 10 were managerial, supervisorial,

12  training, and/or policymaking employees of Defendant COUNTY. At the time of the

13  incident, DOES 9 and 10 were acting under color of law within the course and scope of

14  their duties as employees for the RCSD and/or the COUNTY. They had supervisorial

15  authority over DOES 1-10, and the employees of the RCSD. DOES 9 and 10 were

16  acting with the complete authority and ratification of their principal, Defendant

17  COUNTY.

18      41.    Each of the defendants, including the DOE defendants, caused, and is

19  responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by,

20  among other things, personally participating in the unlawful conduct, acting jointly,

21  or conspiring with others who did so; by ordering, authorizing, acquiescing in, or

22  setting in motion policies, plans, or actions that led to the unlawful conduct, by

23  failing to take action to prevent the unlawful conduct; by failing and refusing to

24  initiate and maintain adequate training and supervision; by failing to enact policies to

25  address the constitutional rights of protesters despite the obvious need for such a

26  policy; and by ratifying the unlawful conduct that occurred by agents and officers

27  under their direction and control, including failing to take remedial or disciplinary

28  action.

SECOND AMENDED COMPLAINT FOR DAMAGES

42.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Mario Solis's constitutional rights and other harm.

43.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

44.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

45.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## V.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A. From April 7, 2022 through September 3, 2022, Pretrial Detainee Mario Solis Was Denied Adequate Mental Health Care and Was Not Protected from Suicide Hazards Despite Obvious Signs of Suicidality and Self-Mutilating Behavior Over a Five-Month Period at the COUNTY Jails.**

46.     On April 7, 2022, Mr. Solis was suffering from a mental health crisis when he went into a local Food 4 Less and proceeded to take $12.06 worth of groceries (skittles) and left the store without paying.  As he was leaving the store, Mr. Solis threw a fire extinguisher at a window.  A security guard followed him into the

parking lot and demanded that Mr. Solis return the skittles.  Due to his altered state of mind, Mr. Solis threatened the security guard to leave him alone while pretending to be armed.

47.     Moments later, police officers from the Riverside Police Department arrived and arrested Mr. Solis at the request of the security guard.  Mr. Solis was charged with second-degree robbery and booked into the Riverside County Sheriff's Department, Robert Presley Detention Center ("RPDC"), located at 4000 Orange St, Riverside, California 92501.

48.     Upon being booked, the RCSD custody staff confirmed that Mr. Solis's had been previously incarcerated at the COUNTY Jails.  The RCSD custody staff, and particularly the RCSD classification staff, were well aware of Mr. Solis's severe mental health issues from the prior incarcerations, which included Mr. Solis engaging in self-harming and suicidal behavior.  Indeed, Mr. Solis made statements that he was suicidal during the booking and screening process.

49.     Despite having undergone a preliminary medical and psychological screening at the time of booking, and despite obvious signs that Mr. Solis, an inmate-patient at the COUNTY Jails, suffered from mental health issues, Mr. Solis was placed in the general population without any designation regarding his medical condition that would alert those in charge of Mr. Solis's desperate need for higher level of care in all custodial and medical respects, including monitoring, medical treatment, psychological treatment, and follow-up care.

50.     From April 7, 2022 through September 3, 2022, Mr. Solis was housed in four different COUNTY Jails. At each facility, Mr. Solis exhibited acutely suicidal behavior that was indicative of severe mental illness which necessitated higher level of care than what was provided by the CHS medical staff and the RCSD custody staff:

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1
2
3

        **i.    April 16, 2022 – August 11, 2022:  LSCF and RPDC's**
               **Unconstitutional Policies, Customs and Practices Violating Inmate-**
               **Patient Mario Solis's Rights.**

4
5
6
7

    51.    On April 16, 2022, Mr. Solis was transferred to Larry D. Smith
Correctional Facility ("LSCF"), located at 1627 S. Hargrave Street, Banning,
California 92220, for housing. Immediately, Mr. Solis began exhibiting alarming
behavior which was noticed by both RCSD custody staff and other inmates.

8
9
10
11
12
13

    52.    On the same day of his transfer, the RCSD custody staff observed Mr.
Solis "donkey kicking" the dayroom door. When the RCSD custody staff approached
Mr. Solis, he continued to engage in "erratic behavior" informing the staff that he had
received "death threats" from the other inmates.  Inmates informed the RCSD
custody staff that Mr. Solis was a "J-Cat" and was displaying odd behavior, such as
randomly laughing to himself and wandering around in the middle of the night.

14
15
16
17
18

    53.    On April 20, 2022, Mr. Solis continued to engage in bizarre behavior.
RCSD custody staff found Mr. Solis pacing back and forth in the dayroom corner and
speaking to imaginary people.  Nothing was done by the RCSD custody staff to
ensure that Mr. Solis received medical care for his severe psychiatric medical
condition.

19
20
21

    54.    Even in the state of psychosis, Mr. Solis understood and appreciated the
direness of his mental illness. On several occasions, he *himself* requested psychiatric
help from the RCSD custody staff and CHS medical staff:

22
23

    55.    On April 23, 2022, Mr. Solis filed a grievance stating that he was in dire
need of medication:

24
25
26
27

        ***"I have been making numerous request. None have been answered. I
am in diar [sic] need of mediation. I am not well. Please help before
things worsen."***

28

**SECOND AMENDED COMPLAINT FOR DAMAGES**

56.     Indeed, Mr. Solis' handwritten note as written by Mr. Solis on April 23, 2022 can be seen below:



57.     RCSD Sergeant Steven Pecoraro was the recipient of this grievance which indicated that there was an inmate at LSCF who repeatedly requested psychiatric help and was continuously ignored.  Rather than launch an investigation into why his RCSD custody staff was ignoring Mr. Solis's pleas for help, Sgt. Pecoraro simply relayed Mr. Solis's request to medical staff and failed to follow-up to make sure that indeed Mr. Solis was seen by a mental health professional. Thereafter, Mr. Solis continued to ask for psychiatric help, but the RCSD custody staff and CHS medical staff continued to ignore him.

58.     On April 27, 2022, Mr. Solis submitted yet again another request for psychiatric help:

SECOND AMENDED COMPLAINT FOR DAMAGES

1
2

> ***"I need. I'm in diar [sic] need of medication please. I am of [sic] suffering of depression and severe sleeplessness. Please help."***

3

4
5

    59.    RCSD Sergeant Harris responded to this grievance by scheduling a psychiatric appointment for May 2, 2022—*five* days later.

6
7
8
9
10
11

    60.    By this point, Mr. Solis's mental health had deteriorated significantly as evidenced by the mental health records which are satiated with notations signaling an acutely suicidal inmate-patient who constantly engages in self-harming and self-mutilating behavior and who is constantly housed in and out of safety cells with no relief in sight due to his obvious *need* for higher level of care *outside* of the COUNTY Jails.

12
13
14
15
16
17
18
19

    61.    From May 25, 2022 through August 11, 2022, Mr. Solis was seen by multiple CHS clinicians at three different COUNTY Jail facilities, namely the RPDC, the LSCF and the JBDC; these clinicians included Julie Brumbaugh, Clinical Therapist I; James McCook, Clinical Therapist I; Gehan Halim, Clinical Therapist III; Lianna Escobar, Clinical Therapist; Kyndle Carson, Clinical Therapist; Jennifer Heidrich, Clinical Therapist; Raymundo Claudio, Clinical Therapist I; Laura Renteria, Clinical Therapist I; Kenya Salas, Clinical Therapist; Andrea Madrigal, Clinical Therapist I; and Lizbeth Bachman, Clinical Therapist II.

20
21

    62.    Notably, all clinicians rated Mr. Solis's behavior as "acute," "severe," "concerning" and "danger to self/others."

22
23
24
25
26
27

    63.    During this time period, Mr. Solis was also constantly in and out of safety cells (*i.e.*, cells intended for acutely suicidal inmates). Safety cells require heightened supervision and monitoring by custody, medical and mental health staff. Safety cells are further maintained in such a way where any potential hazard (*e.g.*, bedsheet, sharp object) is removed from the cells so as to prevent suicides by hanging, cutting, and asphyxiation.

28

///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

64.     On May 25, 2022, Mr. Solis's mental health was rated as "severe" because he was a "danger to himself." Clinician Heidrich described Mr. Solis as being in a "manic state" and placed Mr. Solis in a safety cell.

65.     On May 29, 2022, Clinician McCook changed Mr. Solis's mental health acuity level to "acute" and recommended safety cell placement due to his "unpredictable behavior" and because Mr. Solis was a "danger to self/others."

66.     On June 7, 2022, Clinician McCook *again* changed Mr. Solis's mental health acuity level to "acute" and recommended safety cell placement.  This time, however, the RCSD LSCF Floor Sergeant vetoed that mental health recommendation and instead had Mr. Solis remain "group locked" in his cell.  This is true despite Mr. Solis's mental health being rated as "severe" and "acute."

67.     On June 9, 2022, Mr. Solis was then transferred back to RPDC from LSCF.

68.     On June 18, 2022, Mr. Solis experienced issues with his cell mate.  The RCSD custody staff informed Mr. Solis that they did not segregate inmates at the RPDC mental health floor.  Mr. Solis was then rehoused.

69.     On June 23, 2022, Mr. Solis was placed in a safety cell because he was a "danger to others."  He had threatened to stab two inmates in the dayroom. Clinician Halim rated his mental health as being "acute." Clinician Claudio then cleared Mr. Solis from the safety cell despite still having a rating of "severe" and a designation of "monitoring cell."

70.     During this time, Mr. Solis would also urinate on other inmates' clothing, defecate in the showers and spit at other inmates.

71.     On June 24, 2022, Mr. Solis was *again* transferred from RPDC to LSCF.

72.     Immediately upon arrival, Mr. Solis exhibited signs of a severe mental illness, one which obviously necessitated higher level of care.

73.     On June 25, 2022 (not even 24 hours after being transferred), Clinician McCook recommended that Mr. Solis be placed in a safety cell because he was a

SECOND AMENDED COMPLAINT FOR DAMAGES

"danger to self/others."  He was covering his cell camera and making "bizarre" statements.

74.    On June 26, 2022, Clinician Brumbaugh cleared Mr. Solis from the safety cell placement despite a rating of "severe" and a designation of "monitoring cell."

75.    Not even 24 hours later Mr. Solis continued to engage in self-harming behavior.  Mr. Solis proceeded to cover the cell camera and threatened:

***"I have a pencil and I'm going to stab myself in the neck."***

76.    On June 27, 2022, Clinician Brumbaugh *again* changed Mr. Solis's mental health acuity level to "acute" and recommended safety cell placement.

77.    That same day, Mr. Solis was transferred to the John J. Benoit Detention Center ("JBDC"), located at 82675 St. Hwy. 111, Indio, CA 92201, for safety cell placement as there were no available safety cells at LSCF.

78.    On June 28, 2022, Mr. Solis was removed from the safety cell, even though he still had a mental health rating of "severe." He was then shipped back to LSCF.

79.    Upon his return to LSCF, Mr. Solis's mental health continued to worsen.

80.    On June 30, 2022, Mr. Solis filled a styrofoam with his own feces and wiped it on every cell door of the bottom tier of his housing module.  He then proceeded to urinate in front of a cell door.  Clinician Renteria then changed Mr. Solis's mental health acuity level to "acute" because of "bizarre behavior" and recommended safety cell placement.

81.    On July 1, 2022, Clinician Salas instructed RCSD custody staff, pursuant to California Penal Code § 4011.6, to transport Mr. Solis to an outside psychiatric hospital, namely the Riverside University Health System Medical Center ("RUHS") for treatment and evaluation.  Mr. Solis remained at RUHS until July 7, 2022.

82.    On July 7, 2022, Mr. Solis returned from RUHS psychiatric facility and was rehoused at the RPDC.   Clinician Bachman rated Mr. Solis's mental health as

SECOND AMENDED COMPLAINT FOR DAMAGES

"severe" upon his return. Immediately, Mr. Solis reengaged in alarming behavior.

83.    From July 7, 2022 through July 12, 2022, Mr. Solis was transferred out of RPDC to LSCF then back to RPDC to yet again LSCF.  Throughout this back and forth, Clinician McCook and Clinicians Brumbaugh placed Mr. Solis several times in safety cells due to Mr. Solis being "suicidal," "unpredictable," "danger to self/others" and for having a mental health rating of "severe" and "acute."

84.    During one of the safety cell placements, and specifically on July 12, 2022, Clinician Brumbaugh observed Mr. Solis with a ***pencil*** inside his T-shirt which was wrapped around his neck like a noose.  Clinician Brumbaugh recommended that Mr. Solis stay in the safety cell.  (It is unclear as to how a pencil was allowed inside the safety cell, and whether the pencil was removed from the safety cell.)

85.    On July 12, 2022, Clinician Madrigal noted that Mr. Solis "required higher level of care," and so pursuant Penal Code § 4011.6, Mr. Solis was once *again* transported to the psychiatric facility at RUHS.  Mr. Solis remained at RUHS until July 14, 2022. Upon Mr. Solis's return to RPDC, Clinician Bachman rated Mr. Solis's mental health as "severe."

86.    Within 24 hours, and specifically on July 15, 2022, Mr. Solis expressed suicidal thoughts to the RCSD custody staff.  Mr. Solis threatened to "bash his head." Mr. Solis went on to admit that these suicidal thoughts had been lingering for a week and that he preferred to be in a safety cell.

87.    Despite Mr. Solis's admissions of having had suicidal thoughts for the past seven days, and despite he *himself* requesting to be in a safety cell because he was a danger to himself, Clinician Bachman rated Mr. Solis's mental health as "severe" and placed him in a "monitoring cell." However, because there were no "monitored cells" available at RPDC, Mr. Solis was transferred to LSCF on July 17, 2022.

88.    From July 17, 2022 through August 11, 2022, Mr. Solis's continued to engage in alarming behavior at the LSCF due to his dire need for a higher level of

1  care which the RCSD custody staff and CHS medical staff could obviously not

2  provide for him.  Mr. Solis constantly engaged in the act of gassing (*i.e.*, the act of

3  throwing one's own bodily fluids at others) by throwing milk cartons full of urine

4  into the dayroom, smearing his feces all over the day room and threatening other

5  inmates with gassing.   In response, the RCSD custody staff "group locked" Mr. Solis

6  in his cell.

7  89.    On July 20, 2022, Defendant JESSE DEVERA (CHS Psychiatrist) was

8  scheduled to see Mr. Solis.  Unfortunately, because of Mr. Solis's worsening

9  condition, Mr. Solis did not attend the medical appointment.  Defendant DEVERA

10  did, however, note in Mr. Solis's file that he indeed reviewed Mr. Solis's medical

11  records, and that the treatment plan would be reduced to once a week.  He also billed

12  for 20 minutes of his time.

13  90.    Of particularly note during this time period is the grievance Mr. Solis

14  presented on August 1, 2022 to RCSD Sergeant Kelley wherein he alarmed the

15  RCSD custody staff and CHS medical staff of his serious psychiatric condition:

16  91.    "Vaness was verbally abusive and humiliated at me. ***Please help.  I***

17  ***suffer from depression and other mental disorders.***  I do not want to see Vanessa

18  ever again or other resolution." (Emphasis added.)

19  92.    An earlier grievance had been filed by Mr. Solis on July 26, 2022.

20  There, Mr. Solis had complained about the humiliation he experienced from CHC

21  staffer, Vanessa Sandoval, Institutional Nurse.  Indeed, when Nurse Sandoval was

22  interviewed, she admitted to laughing at Mr. Solis because he "made noises" and

23  "started at her in strange ways."

24  93.    On August 9, 2022, Clinician McCook rated Mr. Solis's mental health as

25  "acute" and placed him in a safety cell.

26  94.    On August 10, 2022, Defendant DEVERA conducted a psychiatric

27  appointment with Mr. Solis while he was in the safety cell.  Defendant DEVERA

28  noted a labile affect (*i.e.,* uncontrollable, intense change in emotions) and

1  documented Mr. Solis's auditory hallucinations and paranoia.  He reduced the

2  treatment plan to once a week and billed for one hour and thirty minutes of his time.

3      95.    On August 11, 2022, Defendant ALAN DEWIT (RCSD Senior

4  Correctional Deputy) and Defendant AARON PEREZ (CHS Mental Health

5  Supervisor), along with other RCSD classification staff including Defendant

6  THOMAS WALKER (RCSD Sergeant), convened regarding Mr. Solis's severe

7  mental health and behavioral issues:

```
SR CD A. Dewit              8/11/2022  1013
SOLIS HAS BEEN PLACED IN HE SAFETY CELL SEVERAL TIMES IN THE LAST MONTH. HAD
SEVERAL INCIDENTS WITH RUBBING FECES ALL OVER THE DAYROOM. HE HAS TRIED GASSING
OTHER INMATES. HAS THREATENED TO GAS DEPUTIES AS WELL. HE HAS MADE SEVERAL
THREATS ABOUT STABBING OTHER INMATES. HE SAVES HIS URINE AND HAS THROWN IT INTO
THE DAYROOM IN THE PAST. THIS INMATE HAS A PROPENSITY FOR VIOLENCE AND
GASSING INMATES AND DEPUTIES. DUE TO THESE ISSUES MH SUPERVISOR PEREZ AND
CLASSIFICATION ARE RECOMMENDING ADMINSTRATIVE MENTAL HEALTH HOUSING. PER
CTI SALAS, CLEARED FROM S/C. DENIED DTO/DTS. RATED SEVERE. RECOMMENDING "AMHH"
DUE TO INMATES BEHAVIORAL AND MENTAL HEALTH HISTORY. APPROVED BY MH SUP PEREZ
AND SGT WALKER. PENDING XFER. HOUSED MOVE AMHH L-3 SEV
SR CD A. Dewit              8/11/2022  1029
```

14      96.    Following the meeting, Defendants DEWITT, AARON PEREZ and

15  THOMAS WALKER decided to transfer Mr. Solis to the "Administrative Mental

16  Health Housing" at the RCSD, Cois M. Byrd Detention Center ("CBDC"), 30755-B

17  Auld Road, Murrieta, CA 92563.

18      **ii**.    **August 11, 2022 – September 2, 2022:  CBDC's Unconstitutional**

19      **Policies, Customs and Practices Violating Inmate-Patient Mario**

20      **Solis's Rights While Housed in the Administrative Mental Health**

21      **Housing.**

22      97.    Upon arrival at the CBDC, Mr. Solis continued to exhibit behavior

23  suggesting a severe mental illness necessitating a higher level of care.

24      98.    Indeed, on August 13, 2022, Mr. Solis made it known to Defendant

25  JUNICE DORESTIN (CHS Clinical Therapist), that he would stop taking his

26  medications in an effort to be moved out of administrative segregation.  Upon

27  information and belief, Defendant DORESTIN did nothing to prevent Mr. Solis from

28  stopping his psychiatric medication, nor did she inform other CHC medical staff of

1    Mr. Solis's plan.

2        99.    It should be noted that from the date of Mr. Solis's arrest, *i.e.,* April 7,

3    2022, until the date of his death, *i.e.,* September 3, 2022, Mr. Solis consistently

4    refused to take his psychiatric medication.  There were even periods when Mr. Solis

5    would consistently refuse medication for three weeks at a time.

6        100.   In the immediate 30 days preceding his death, there was but one day that

7    Mr. Solis did not refuse medication; that day was August 20, 2022.  Every single

8    other day was marked with refusals. This constant refusal of medication should have

9    been flagged to the psychiatric provider.  Certainly, a mentally ill inmate-patient's

10   constant refusal of psychiatric medication is a clear indication that higher level care is

11   necessary for the inmate-patient, and that without some type of necessary higher level

12   care intervention, the inmate-patient will continue to consistently refuse the

13   psychiatric medication thereby perpetuating the psychosis.

14       101.   On August 19, 2022, Defendant JOANNA RIOS-MONTOYA (CHS

15   Behavioral Health Specialist) met with Mr. Solis.   Defendant RIOS-MONTOYA

16   observed Mr. Solis sleeping in a troubling location inside his cell, specifically he had

17   moved his mattress to the ground and placed the mattress in front of the cell door.

18   Defendant RIOS-MONTOYA also observed Mr. Solis' refusal to keep up with his

19   hygiene, offering him soap, which he refused.  It should be noted that Mr. Solis's

20   mental health rating was "severe" and yet Defendant RIOS-MONTOYA provided

21   Mr. Solis with writing materials and a ***pencil***.

22       102.   On August 22, 2022, Defendant DORESTIN met with Mr. Solis.  She

23   noted that his cell was in disarray and dirty with Styrofoam and empty milk cartons

24   all over the floor.

25       103.   On August 26, 2022, Defendant DORESTIN again met with Mr. Solis.

26   She again noted that he looked disheveled and that his cell was in disarray.  As

27   Defendant DORESTIN walked away, Defendant JAMES GRIESENGER (RCSD

28   Corporal) requested her approval to have Mr. Solis rehoused from "CPOD 2" to

"BPOD D3," which is the B-Pod Dayroom 3.   Notably, Sgt. LINDO described B-Pod Dayroom 3 as follows:

> Inmates in B-Pod Dayroom 3 are Administrative Segregation inmates with severe mental health conditions. Their conditions affect their cognitive, behavioral, and physical well-being. Thus, the inmates in this dayroom can be some of the most unpredictable and noncompliant inmates that are in custody.

104.   On August 29, 2022, Defendant DORESTIN attempted to meet with Mr. Solis; however, he was in court.  Once again, Defendant DORESTIN noticed Mr. Solis's cell in disarray but did nothing to inspect the cell for any indication of suicidality on behalf of Mr. Solis, particularly given her recent interactions and observations of Mr. Solis.

105.   On August 30, 2022, Defendant RIOS-MONTOYA met with Mr. Solis. Defendant RIOS-MONTOYA had a hard time communicating with Mr. Solis who just stood on the other side of the cell door quiet and not responding to her questions. Defendant RIOS-MONTOYA asked Mr. Solis to speak up, and she could still not hear him.  She noticed his poor hygiene and encouraged him to shower and change his clothes.  Defendant RIOS-MONTOYA rated his mental health as "severe"  and proceeded to hand Mr. Solis paper and *another **pencil***.

106.   Mr. Solis continuously refused medication.  He also refused to leave his cell.

107.   Indeed, during that time, the Superior Court where Mr. Solis' criminal case was pending was determining Mr. Solis's competency to stand trial.  The Court ordered several mental health providers to examine Mr. Solis and report back with their competency findings.

108.   On August 31, 2022, CHS medical staff and Defendant SPENCER RUSTAD (RCSD Classification Staff) conducted the mandatory 30-day administrative housing review and recommended that because of security concerns, Mr. Solis should remain housed at the CBDC's Administrative Mental Health Housing in a single man cell.

1        109.   On August 31, 2022, Defendant SARAH PUGH (CHS Registered

2  Nurse) met with Mr. Solis.  She noted that he appeared disheveled, and that his cell

3  was in disarray.  She also noticed that Mr. Solis was wearing his underwear as a

4  "mask."[2]   Nothing was done to evaluate his wellbeing despite the fact that, upon

5  information and belief, Mr. Solis's appearance clearly indicated that he was

6  experiencing psychosis and suicidal ideations and was in dire need of medical

7  attention.  There were obvious signs that he was self-mutilating inside his cell.

8        110.   On September 1, 2022, Defendant HOAI TRUC VU (CHS Institutional

9  Nurse) was assigned to pill call.  Mr. Solis refused.  Upon information and belief, Mr.

10  Solis's appearance clearly indicated that he was experiencing psychosis and suicidal

11  ideations and was in dire need of medical attention.  There were obvious signs that he

12  was self-mutilating inside his cell.

13        111.   On September 1, 2022, Defendant DORESTIN met with Mr. Solis.  She

14  noted that he was not speaking and was uncooperative. Mr. Solis had a "blunt stare"

15  on his face. Mr. Solis refused to answer any of Defendant DORESTIN's questions.

16  He also refused to step aside to allow Defendant DORESTIN to look into his cell.

17  Despite these clear signs of psychosis, Defendant DORESTIN and the accompanying

18  RCSD custody staff did nothing to further evaluate Mr. Solis's wellbeing.

19        112.   On September 2, 2022, at approximately 3:39 a.m., Defendant PUGH

20  was assigned to pill call and was accompanied by Defendant HOWARD MCNEIL

21  (RCSD Floor Deputy). Mr. Solis refused.  Upon information and belief, Mr. Solis's

22  appearance clearly indicated that he was experiencing psychosis and suicidal

23  ideations and was in dire need of medical attention.  There were obvious signs that he

24  was self-mutilating inside his cell.

25

26  [2] Defendant SARAH PUGH's observation that Mr. Solis was wearing his underwear

27  as a "mask" was yet another clear sign that not only Mr. Solis' condition had
   significantly deteriorated, but that Mr. Solis was clearly suicidal and would use any

28  item in his possession as a tool of self-harm.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

113.   On the morning of September 2, 2022, a court hearing was held in Mr. Solis's underlying criminal matter.  Due to the severity of Mr. Solis's mental health issues, Mr. Solis was ultimately deemed to be mentally incompetent and was ordered to be committed to the custody of the State Department of State Hospitals pursuant to California Penal Code § 1370.

114.   On September 2, 2022, at approximately 7:18 p.m., Defendant DORESTIN met with Mr. Solis. Upon information and belief, Mr. Solis's appearance clearly indicated that he was experiencing psychosis and suicidal ideations.

115.   On September 2, 2022, at approximately 10:39 p.m., Defendant SHIRLEY BAUTISTA (CHS Institutional Nurse) was assigned to pill call and was accompanied by Defendant MARIO CORREA (RCSD Floor Deputy). According to Defendant BAUTISTA, she was not able to give Mr. Solis his psychiatric medication because he had flooded his cell. Upon information and belief, Mr. Solis's appearance clearly indicated that he was experiencing psychosis and suicidal ideations and was in dire need of medical attention.  There were obvious signs that he was self-mutilating inside his cell.

116.   Clearly, Mr. Solis exhibited alarming behavior during the five-month incarceration which was indicative of severe mental health issues, including self-mutilation, suicidal ideations, auditory and visual hallucinations, and psychosis. Despite these clear signs that Mr. Solis was in dire need of psychological care, the COUNTY custody, medical and mental health staff ignored him and failed to get him immediate medical attention, failed to provide any enhanced monitoring or supervision, and failed to alert medical providers, including a psychiatrist, of Mr. Solis's deteriorating mental health.

**iii.    September 3, 2022:  Inmate-Patient Mario Solis Commits Suicide at   the CBDC Administrative Mental Health Housing by Asphyxiating Himself With Two Bags of Soap, a Tooth Brush, and a Pencil Which Ruptured a Vein in His Neck.**

SECOND AMENDED COMPLAINT FOR DAMAGES

117.    On September 3, 2022, Defendant CORREA and Defendant MILLS were assigned as floor deputies to CBDC Administrative Segregation Housing Module: a housing module designated for "inmates with severe mental health conditions" who are "some of the most unpredictable and noncompliant inmates" in custody at the COUNTY Jails.

118.    At approximately 12:48 a.m., Defendant CORREA and Defendant MILLS found Mr. Solis in a seated position on the cell floor "slouched" over with his face and body leaning against the cell door.  Defendant CORREA and Defendant MILLS yelled out to Mr. Solis. Mr. Solis did not respond. Notwithstanding Mr. Solis's obvious need for medical attention, Defendant CORREA and Defendant MILLS continued to conduct security checks of Dayrooms 3 and 4.  Eleven minutes later, and only after Defendant CORREA and Defendant MILLS had completed the outstanding security checks in Dayrooms 3 and 4, did Defendant CORREA and Defendant MILLS return to Mr. Solis's cell.  Defendant CORREA and Defendant MILLS once again yelled out Mr. Solis's name but he did not respond as he was already dead.

119.    Indeed, Defendant CORREA and Defendant MILLS had observed Mr. Solis engaging in alarming behavior in the days and weeks leading to the death.  Even in the hours leading up to the death, Defendant CORREA and Defendant MILLS observed Mr. Solis engaging in alarming behavior.  The toilet in his safety cell was overflowing, saturating all of his belongings with filthy toilet water. There were also alarming handwritten notes all over the cell:

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21     120.     Mr. Solis had visible signs on his body that he was engaging in self-

22 harming and self-mutilating behavior not just hours before being found dead, but

23 *weeks*. He had ligature marks on his neck.  His forearms displayed both healed and

24 fresh scars from cutting, and both of his wrists had fresh *horizontal* cuts also from

25 cutting.  His arms and hands also had chunks of flesh missing. Despite the fact that

26 some of these wounds were indeed fresh with blood coming out of them,  Defendants

27 CORREA and MILLS would deny ever seeing these obvious signs of self-harming

28 and self-mutilating behavior all over Mr. Solis's body:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





**SECOND AMENDED COMPLAINT FOR DAMAGES**

121.    There was also a visible noose tied to the bottom of the chair inside of
Mr. Solis's cell:



122.    Mr. Solis was clearly in dire need of psychiatric assistance. There can be
no greater clearer sign of suicidality than fashioning the means to kill oneself by tying
an actual noose and cutting one's own wrists. Yet this did not lead to suicide watch,
safety cell placement or immediate mental health care for Mr. Solis.

123.    It should be noted that earlier in that shift, Mr. Solis was engaging in
erratic behavior and continued to press the cell intercom throughout the day.
Defendant CORREA would later admit that he was annoyed with Mr. Solis's
constant hitting of the cell intercom.  It should also be noted that Defendant
CORREA has a penchant for ignoring inmates' pleas for help through their use of the
cell intercoms.[3]

_____
[3] Indeed, Defendant CORREA is a named individual defendant in the federal civil rights action
*Estate of Richard Matus, Jr., et al. v. County of Riverside/RCSD, et al*.  The *Matus* matter also
arose from an in-custody death in 2022.  There too, Defendant CORREA ignored an inmates' pleas
for medical assistance through the use of a cell intercom at CBDC.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

124.   Additional time went by, and at approximately 1:03 a.m., Defendant CHARLES TANGER (RCSD Blue Team Sergeant) and Defendant PATRICK LINDO (RCSD Watch Commander at CBDC) walked over and witnessed Defendants CORREA and MILLS outside the cell door still trying to get a response from the already dead Mr. Solis.  Defendant TANGER and Defendant LINDO peeked into the cell and saw Mr. Solis slouched over leaning against the door. Defendant TANGER then instructed Defendants CORREA and MILLS to open the cell, pull Mr. Solis's body out of the cell and attempt resuscitative efforts on an already dead body.  He was finally pronounced at 1:39 p.m. on September 3, 2022.[4]

125.   By this time, deaths of inmates at the COUNTY Jails were so rampant that when Mr. Solis's in-custody death was announced over the COUNTY's PSAP[5] the following exchange took place:

**RCSD Sgt. Payan:**          **"We had another jail death moments ago. There was an in-custody death at Cois Byrd."**
**Dispatch:**                          **"Of course there was."**

126.   Indeed, COUNTY medical and custody staff had an opportunity to observe the clear signs of Mr. Solis's acute suicidality. Despite these alarming signs, the COUNTY medical and custody staff were indifferent to Mr. Solis's health and safety.

127.   Mario Solis was thirty-one years old when he died on September 3, 2022 while he was in custody at the Cois M. Byrd Detention Center. It was not until September 9, 2022, six days after Mr. Solis had died, that his family was notified about his death.

---

[4]  It should be noted that the RCSD did not inform Mr. Solis of his death until September 9, 2022 – six days after he had passed.

[5] Public Safety Answering Point (PSAP); see https://www.riversidesheriff.org/772/911-Dispatch-Communications

**SECOND AMENDED COMPLAINT FOR DAMAGES**

128.    On September 3, 2022, Defendant JUSTIN WILLIAMS was working as an investigator for the RCSD, Corrections Central Investigations Bureau.  Defendant WILLIAMS was assigned to investigate the facts and circumstances surrounding Mr. Solis's death.  Thereafter, and until December 9, 2022, Defendant WILLIAMS conducted an investigation that served to shield Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, CHARLES TANGER, PATRICK LINDO, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6 from liability with regard to Mr. Solis's death.   Defendant WILLIAMS failed to properly investigate Mr. Solis's death by omitting material facts provided to him during inmate witness interviews, conducting cursory and superficial interviews of key inmate witnesses, and further manufactured witness recollection in an effort to ensure that Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, CHARLES TANGER, PATRICK LINDO, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6 would not be disciplined with regard to Mr. Solis's death.  Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO and CHARLES TANGER where aware of Defendant WILLIAMS' wrongful conduct related to his investigatory role into Mr. Solis' death, and nevertheless ratified and authorized Defendant WILLIAMS' investigatory findings and case disposition.[6]

---

[6] "Failure to properly investigate, like failure to discipline employees involved in incidents of excessive force, is evidence of and supports a finding excessive force was not only accepted but was customary." *Hunter v. County of Sacramento,* 652 F.3d 1225, 1233 (9th Cir. 2011). "[E]vidence of a recurring failure to investigate and
discipline municipal officers for constitutional violations can help establish the existence of an unconstitutional practice or custom…." *Id.*

**SECOND AMENDED COMPLAINT FOR DAMAGES**

129.  Mario Solis was a pretrial detainee, and therefore, innocent until proven guilty.

130.  Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910, *et seq*., and this action is timely filed within all applicable statutes of limitation.

131.  This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

132.  Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

///

///

**A. The COUNTY Jails Experienced Their Deadliest Year in 2022.**

133.   In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths. Prior to 2022, Riverside County had not logged more than twelve (12) such deaths in any year since 2005.[7]

134.   Mario Solis's death is one of eighteen (18) in-custody deaths within the COUNTY Jails during the 2022 calendar year, and was the twelfth death that year:

     **i.**    Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

     **ii.**    Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death: "Natural")

     **iii.**    Justin Kail (Date of Loss: May 17, 2022; Manner of Death: "Accident-Overdose")

     **iv.**    Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death: "Natural")

     **v.**    Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death: "Accident-Overdose")[8]

     **vi.**    Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death: "Accident-Overdose")

     **vii.**    Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death: "Natural")

     **viii.**    Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death: "Accident-Overdose")

---

[7] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[8] Pretrial detainee Michael Vasquez was just 20 years old at the time of his death.  He had been in the facility for only six days prior to being exposed to the dangers and risks permeating the CBDC, all of which ultimately resulted in his death.

1           **ix.**   Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of

2               Death: "Accident-Overdose")

3           **x.**   Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death:

4               "Accident-Overdose")

5           **xi.**   Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death:

6               "Natural")

7           **xii.**   Mario Solis (Date of Loss: September 3, 2022; Manner of Death:

8               "Accident")[9]

9         **xiii.**   Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death:

10              "Strangulation")[10]

11         **xiv.**   Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of

12              Death: "Suicide/Hanging")

13         **xv.**   Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of

14              Death: "Homicide Willful")[11]

15         **xvi.**   Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death:

16              "Pending")

---

[9] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (*i.e.*, cells intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap. Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this death as an "accident" in an effort to absolve themselves from liability arising from a *suicidal* pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide. What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.

[10] Decedent Kaushal Niroula was a transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender. Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

[11] Pretrial detainee Ulyses Munoz Ayala was brutally killed by a *known* violent inmate, Erik Martinez, whom he was forced to share a cell with. *See* "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**xvii.**    Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

**xviii.**    Ronald Cook (Date of Loss: December 12, 2022 Manner of Death: "Pending")

135.    The deaths include six (6) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and three (3) pending.  Seven (7) of the in-custody deaths have occurred at the Cois M. Byrd Detention Center in Murrieta, California.

136.    The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails. According to Defendant KRACHMER, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[12]

137.    The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails. According to Defendant KRACHMER, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[13]

138.    The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides.  On November 23, 2022, pretrial detainee Charles Wall attempted suicide by jumping off the top tier of his housing module at RPDC.  From November 19, 2022

---

[12] *See* "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

[13] *See* "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

**SECOND AMENDED COMPLAINT FOR DAMAGES**

through November 23, 2022, Mr. Wall made repeated requests for psychiatric care and medication. Mr. Wall suffered from schizophrenia and suicidal ideations, which was known to the COUNTY custody and medical staff given his prior attempts to commit suicide at RPDC in 2015, as well as his extensive medical and mental health history. These requests were ignored by the custody and medical staff. On November 23, 2022, Mr. Wall pled with a custody staffer, begging for an opportunity to speak with a psychiatrist. The custody staffer demanded to know why Mr. Wall needed to speak with a psychiatrist. When Mr. Wall hesitated, the custody staffer shouted, "Do what you gotta do! Stop pushing my fucking buttons or you're gonna give me a reason to come in!" Shortly thereafter, Mr. Wall attempted suicide by jumping off the second story of his housing module.

**B. The COUNTY Jails Continued to Experience Deadly Numbers of In-Custody Deaths in 2023.**

139.    In 2023, the County of Riverside has reached record breaking in-custody deaths at the RCSD County Jails.

140.    As of November of 2023, the Riverside County Sheriff's Department has already claimed the lives of twenty-two (22) persons who died while in the custody of the County. Of those in-custody deaths, twelve (12) deaths are related to conditions of confinement within the RCSD County Jails:

   **i.**    On January 12, 2023, pretrial detainee Mark Spratt died as a result of injuries he suffered during a brutal attack by his cellmate at CBDC. Mr. Spratt was only 24 years old at the time of his death.

   **ii.**    On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell at RPDC. Upon information and belief, Mr. Viramontes' death was caused by hazards permeating the RPDC. Mr. Spratt was only 26 years old at the time of his death. An investigation into the manner and means of death remains pending.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

  iii. On February 21, 2023, pretrial detainee Christian Drye died in-custody at a COUNTY hospital due to injuries suffered during an arrest.  An investigation into the manner and means of death remains pending.

  iv. On March 11, 2023, pretrial detainee Asher Saunders was found unresponsive in his cell at CBDC.  Upon information and belief, the death was caused by hazards permeating the CBDC.  An investigation into the manner and means of death remains pending.

  v. On May 23, 2023, 16-year-old Ciara Sanchez was transported from a RCSD Juvenile Facility to a local hospital where she eventually died.  Upon information and belief, the death was caused by hazards permeating the RCSD Juvenile Facility.  An investigation into the manner and means of death remains pending.

  vi. On May 26, 2023, Ruben Guzman, a 41-year-old pretrial detainee, died following an undisclosed incident at JBDC. Upon information and belief, Mr. Guzman received numerous threats to his life by inmates and custody staff at the COUNTY Jails. Upon information and belief, Mr. Guzman was found unresponsive in a holding cell on May 22, 2023 with "global swelling of the head." He died four days later on May 26, 2023.

  vii. On July 5, 2023, Astrid Johnson, a 62-year-old woman pretrial detainee housed in the JBDC, died in-custody.  Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms. Johnson with adequate medical care.  An investigation into the manner and means of death remains pending.

  viii. On August 14, 2023, Steven Crawford, a 71-year-old pretrial detainee, was found unresponsive in his cell at JBDC.  Upon information and belief, the death was caused by hazards permeating the JBDC.  An investigation into the manner and means of death remains pending.

**SECOND AMENDED COMPLAINT FOR DAMAGES**

ix.    On August 27, 2023, Tavea Starks-Walker, a 31-year-old pretrial detainee, was found unresponsive in his cell at LSCF.  Upon information and belief, the death was caused by hazards permeating the LSCF.  An investigation into the manner and means of death remains pending.

x.    On September 14, 2023, Damon Beitz, a 46-year-old pretrial detainee, was found unresponsive in a holding cell at RPDC.  Mr. Beitz had been arrested by RCSD deputies just hours before being found unresponsive in his cell.  Upon information and belief, the death was caused by injuries Mr. Beitz suffered during the arrest. An investigation into the manner and means of death remains pending.

xi.    On September 18, 2023, Jess Flores, a 46-year-old pretrial detainee, was found unresponsive in his cell at CBDC.  Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Flores with adequate medical care.  An investigation into the manner and means of death remains pending.

xii.    On November 4, 2023, Charles Giurbino, a 58-year-old pretrial detainee, was found unresponsive in his cell at LDCF.  Upon information and belief, the death was caused by hazards permeating the LSCF.  An investigation into the manner and means of death remains pending.

141.    The Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the COUNTY Jails. Upon information and belief, this indifference has resulted in the 2022-2023 deaths of Kaushal Niroula, Ulyses Munoz Ayala, Mark Spratt, and Ruben Guzman, and the brutal sexual assault of a pretrial detainee in April of 2023 at the COUNTY Jails.

**C. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.**

**SECOND AMENDED COMPLAINT FOR DAMAGES**

142.   Despite the record-breaking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 12525[14] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[15]

143.   The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

144.   The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate.[16]

145.   The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners.[17] Upon information and belief, this orchestrated misclassification of the pretrial status of the decedents was done purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment

---

[14] *See* Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[15]   *See* Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[16] *See* "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed-report-inmate-deaths-state-time/8017820001/

[17] *Id.*

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  higher degree of culpability standard, rather than the less stringent Fourteenth

2  Amendment degree of culpability.[18]

3  **D. California Department of Justice Launches Patterns and Practices**

4  **Investigation into Recording Breaking In-Custody Deaths at the**

5  **COUNTY Jails.**

6  146.  On February 23, 2023, the California Department of Justice (DOJ)

7  announced its decision to launch a formal investigation into Defendant RIVERSIDE

8  COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices

9  resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of

10  excessive force by sheriff's deputies, disproportionately affecting Latino and African

11  American communities.[19] The raw data and the per capita data make clear that the

12  COUNTY Jails are a death sentence for any pretrial detainee, some of whom have

13  died just days after being booked.[20]  For reference, San Diego County had 19 in-

14  custody deaths in 2022, despite an average *daily* jail population of *500 more people*

15  *than* Riverside County.

16  _____

17  [18] Pretrial detainees are perceived as innocent under the eyes of the law.  Because they are mere

18  detainees who are simply awaiting their day in court, the Constitution mandates that additional
   protective measures be put in place to ensure that the detainees are not harmed while in the

19  government's custody.  More specifically, the 14th Amendment requires that correctional facilities
   not be deliberately indifferent towards the detainees' safety and protection.  *See Gordon v. County*

20  *of Orange,* 888 F.3d 1118 (9th Cir. 2018). Once an inmate has been formally convicted of a crime,
   they are deemed to be a post-conviction prisoner.  While the Constitution too protects post-

21  conviction prisoners, the 8th Amendment merely requires that the prisoners not be subjected to
   cruel and unusual punishment while in the government's custody. *See Castro v. County of Los*

22  *Angeles*, 833 F.3d 1060 (9th Cir. 2016).  The end result is that the legal standard under which a civil
   rights lawsuit is premised upon is much higher and more difficult to prove for a post-conviction

23  prisoner (*i.e.*, subjective standard) rather than a pretrial detainee (*i.e.,* objective standard).  Upon
   information and belief, the COUNTY DEFENDANTS purposely classified the pretrial detainees as

24  inmates who had already been "sentenced" in an effort to make it merely impossible for the families
   to establish liability because of the heightened standard of culpability imposed on civil rights cases

25  filed by post-conviction prisoners.

26  [19] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches
   Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at

27  https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-
   riverside-county

28  [20] *Id.*

**SECOND AMENDED COMPLAINT FOR DAMAGES**

147.   During the press conference, the California Attorney General Rob Bonta expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the institutions that serve them […]. When some communities don't see or feel they are being treated equitably by law enforcement, it contributes to distrust and hurts public safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths and allegations of misconduct — too many families and communities in Riverside County are hurting and looking for answers. As part of my office's ongoing efforts to support constitutional policing, the California Department of Justice is opening a civil rights investigation into the Riverside County Sheriff's Office. Whether you have a loved one in jail or are worried about crime in your neighborhood, we all benefit when there is action to ensure the integrity of policing in our state."

148.   In response to the California Department of Justice's civil rights investigation in the COUNTY Jails, SHERIFF BIANCO issued the following offensive statement illustrating indifference towards the lives lost in his jails: "This investigation is based on nothing but false, and misleading statements, and straight-out lies from activists, including their attorneys. This will prove to be a complete waste of time and resources."[21]

**E. RCSD's History of Indifference Towards Inmates Incarcerated at the COUNTY Jails.**

149.   For well over a decade now, the COUNTY's own Grand Jury, as well as several independent auditors, have come to the same conclusion: dangerous deficits in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

---

[21] *See* Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at https://www.youtube.com/watch?v=6ttMVVLyfaQ

SECOND AMENDED COMPLAINT FOR DAMAGES

150.   The "2010-11 Grand Jury Report: Riverside County Detention Health Care Administration" found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas. [22]

151.   The Grand Jury released an updated report in June 2012, noting that mental health staffing had in fact decreased since its prior year's report. [23]

152.   On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  The class action also alleged discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

153.   The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

   i.   RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

   ii.    RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to establish legally required confidentiality, and to identify and correct its own failings;

---

[22] *See* 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf

[23] *See* 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

SECOND AMENDED COMPLAINT FOR DAMAGES

     **iii.**    RCSD, by policy and practice, maintains and runs substandard
medication management and administration;

     **iv.**    RCSD, by policy and practice, is severely understaffed at the COUNTY
Jails;

     **v.**    RCSD, by policy and practice, provides substandard medical care to
inmates;

     **vi.**    RCSD, by policy and practice, provides substandard mental health care
to inmates;

154.   On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

155.   On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the United States Constitution.

156.   On July 15, 2015, the neutrally-appointed experts issued reports, determining that the health care failed to meet the constitutional minimum. As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

157.   Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the *Gray* class action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

**F. The County Defendants' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails Affecting Inmates with Mental Health Issues.**

158.   Defendants SHERIFF BIANCO the RCSD Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and DAVID HOLM, through their supervision of the COUNTY's Correctional Health Services (hereinafter also "CHS")

medical staff, were responsible for the provision of medical and mental health services at the COUNTY Jails, and as such, were responsible for the following at the COUNTY Jails:

    i.    Staffing for the jail's medical and mental health units;

    ii.    Administrative structure, medical direction and operational oversight for the medical and mental health units;

    iii.    Oversight of the day-to-day operations of the health services programs at the jail;

    iv.    Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

    v.    Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

    vi.    Development, implementation and revision policies, procedures and practices for the training of custody, medical and mental health staff at the jail;

    vii.    Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

    viii.    Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

159.    Defendants COUNTY, RCSD, SHERIFF BIANCO the RCSD Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and DAVID HOLM, and the COUNTY custody, medical and mental health staff, and each of them, had been on notice for years that their provision of medical and mental health

1  treatment to inmates at the COUNTY Jails was inadequate and resulted in needless

2  harm and death.

3      160.   By the time that decedent Mario Solis was moved to CBDC for safety

4  cell placement, and was specifically housed within Unit #B, Cell #57, SHERIFF

5  BIANCO the RCSD Corrections Supervisors EDWARD DELGADO, JAMES

6  KRACHMER, and DAVID HOLM, and the COUNTY custody, medical and mental

7  health staff, and each of them, understood the jail cell where decedent Mario Solis

8  was housed on August 11, 2022 and until his death on September 3, 2022 was not

9  suitable for an inmate who exhibited clear signs of psychosis and suicidal ideations

10  because the jail cell contained suicide hazards and was unreasonably dangerous for

11  housing inmates with identified mental health concerns

12      161.   Defendants COUNTY, RCSD, SHERIFF BIANCO the RCSD

13  Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and DAVID

14  HOLM, and the COUNTY custody, medical and mental health staff, and each of

15  them, knew that placing decedent Mario Solis in such a jail cell would pose a

16  substantial risk of death. Prior to the death of decedent Mario Solis, other persons in

17  the custody of the COUNTY and supervised and cared for by the COUNTY medical

18  and custody staff had attempted suicide by similar, if not identical, means during their

19  incarcerations at the COUNTY Jails.

20      162.   Defendants COUNTY, RCSD, SHERIFF BIANCO the RCSD

21  Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and DAVID

22  HOLM, and the COUNTY custody, medical and mental health staff, and each of

23  them, were repeatedly put on notice of the great dangers which existed within the

24  COUNTY Jails through the long history of in-custody deaths; the record-breaking

25  amount of fentanyl overdoses throughout all COUNTY Jails; the federal class action

26  *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D.

27  Cal.) targeting the COUNTY custody, medical and mental health staff's deliberate

28  indifference to the safety and protection of inmates; the warnings from neutrally-

selected experts regarding the COUNTY custody, medical and mental health staff's failures amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the COUNTY's obligations under the Eighth and Fourteenth Amendments; and through a voluntarily entered Settlement Agreement which required that the COUNTY remedy all of the deficiencies addressed in the *Gray* class action.

163.   Based on the aforementioned, Defendants COUNTY, RCSD, SHERIFF BIANCO the RCSD Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and DAVID HOLM, and the COUNTY custody, medical and mental health staff, and each of them, knew of the dangers that posed a risk to decedent Mario Solis's safety, yet disregarded these dangers resulting in his death.

**G. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating His COUNTY Jails.**

164.   A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id*. at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional

1 | deprivations of which the complaint is made,' or 'conduct that showed a reckless or
2 | callous indifference to the rights of others.'" *Id*. "We have never required a plaintiff
3 | to allege that a supervisor was physically present when the injury occurred." *Id*.

4 | 165.   The endemic, ongoing and unabated risks of injury or death to inmates
5 | incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long
6 | been aware of these risks and harms which have resulted in injury and death to
7 | inmates incarcerated in his COUNTY Jails.  SHERIFF BIANCO's failure to take
8 | action to ameliorate these conditions constitutes deliberate indifference to the safety
9 | and health of inmates incarcerated in his COUNTY Jails.

10 | 166.   SHERIFF BIANCO has made several public statements all of which
11 | serve as illustrations of his great indifference towards the inmates, most of whom are
12 | pretrial detainees and innocent under the eyes of the law, who are in the
13 | government's custody in his COUNTY Jails.

14 | 167.   Despite the alarming trends in overdoses and in-custody deaths,
15 | SHERIFF BIANCO blames the decedents and their families for the in-custody deaths
16 | and overdoses in the COUNTY Jails – all of which are fully controlled and managed
17 | by him.

18 | 168.   On September 16, 2022, The Press-Enterprise posted the article "Sheriff
19 | Explains How 13 Riverside County Inmates Died This Year" on Facebook with the
20 | following caption: "Less than an hour after the family of a man who died in jail
21 | publicly complained about a lack of information on his death and that of 12 other
22 | Riverside County inmates this year, Sheriff Chad Bianco explained how they died." [24]

---

[24] *See* "Sheriff Explains How 13 Riverside County Inmates Died This Year" (The Press-Enterprise
Facebook Page, September 16, 2022), available at:
https://www.facebook.com/page/50855317267/search/?q=chad%20bianco%2013%20riverside%20
county%20inmates%20died

**SECOND AMENDED COMPLAINT FOR DAMAGES**

169.   Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:[25]



(1)   Did they demand that their family members not commit suicide or consume drugs while they were in custody?

(2)   Did they ever demand that their family members not commit crimes in the first place?

(3)   Did their parents ever demand they take responsibility for their own actions?

(4)   Do they ever think they played a huge part in the situation they find

---

[25] Notably, SHERIFF BIANCO deleted the post thereafter.  SHERIFF BIANCO did this despite the post being highly relevant and material to Plaintiffs' supervisorial claims against him.  This is textbook definition of spoliation.  Courts generally agree that the duty to preserve is triggered as soon as a potential claim is identified. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"); *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *6-7 (C.D. Cal. 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. 2020).  Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner*, LLP, 590 F.3d 638, 649 (9th Cir.2009); *see also Leon v. IDX Systems Corp.*, 464 F.3d 951, 959, (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'").

**SECOND AMENDED COMPLAINT FOR DAMAGES**

themselves in, other than the personal actions of their deceased loved one?

170.   Indeed, as recent as January 2, 2024, SHERIFF BIANCO has continued to chastise families who have lost their loved ones due to their struggles with mental illness and suicidal tendencies.  In response to the filing of the federal civil rights action *Estate of Alicia Upton, et al. v. County of Riverside, Riverside County Sheriff's Department, et al*., SHERIFF BIANCO issued the following insulting statement to Ms. Upton's family:

    (1)   "This is nothing more than someone wanting money."

    (2)   "We're still in the same place where there's no personal accountability for anything - just sue the person with the deepest pockets."

    (3)   "***To say we're responsible for a suicide is silly***." (Emphasis added.)[26]

171.   Notably, the *Upton* action pertained to the in-custody death Alicia Upton, who was 21 years old at the time of her death.  Ms. Upton committed suicide just nine (9) days after she was arrested and booked into the RCSD, Larry D. Smith Correctional Facility.  Despite having undergone a preliminary medical and psychological screening at the time of booking where she expressed suicidal thoughts (e.g., "I kinda always wanted to die"), and despite obvious signs that Ms. Upton was acutely suicidal and engaged in self-injurious behavior (e.g., "severe" mental health rating, 20 visible cut marks on her left arm), Ms. Upton was removed from the safety cell on April 24, 2022 and placed in a cell which was known to pose risk of death an injury to suicidal inmates by virtue of the hazards contained in the cell (e.g., bedsheets and attachment points).  On April 28, 2022, at approximately 8:14 p.m.,

[26] *See* "Riverside County sheriff slapped with another lawsuit over inmate death Sheriff Chad Bianco says the suit by the parents of 21-year-old Alicia Upton represents 'nothing more than someone wanting money' (Press Enterprise, January 2, 2024), available at: https://www.pressenterprise.com/2024/01/02/riverside-county-sheriff-slapped-with-another-lawsuit-over-inmate-death/

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  Ms. Upton created a noose from her bed sheets.  Four minutes later, and at

2  approximately 8:18 p.m., Ms. Upton proceeded to tie the bed sheets around the upper

3  bunk and begin the process of asphyxiating herself through strangulation.  Ms. Upton

4  was ultimately pronounced dead at 9:12 p.m. The entire act of committing suicide

5  through strangulation was captured by the surveillance camera that was placed inside

6  of Ms. Upton's cell.  RCSD custody staff and/or CHS medical staff failed to notice

7  Ms. Upton as she performed the act of strangulation on video.

8      172.   SHERIFF BIANCO also blames the inmates themselves:  "There are

9  inmates that purposely get arrested just to smuggle drugs into jail. It is either for

10  money, money on the outside, money or favor on the inside […] It's part of that

11  culture of power inside the jails, and drugs are a part of it." [27]

12      173.   In response to the Department of Justice's recent announcement about its

13  decision to investigate the patterns and practices existing within the COUNTY Jails,

14  SHERIFF BIANCO expressed the following indifference towards pretrial detainees

15  dying at alarming rates within his COUNTY Jails: "Of course I'm not happy, this is

16  going to waste our time.  Every single on of these inmate deaths was out of anyone's

17  control.  The fact of the matter is that they just happened to be in our custody."[28]

18      174.   Interestingly, SHERIFF BIANCO has taken this hardline (and insulting)

19  position when asked about fentanyl overdoes in his jails.  Yet, upon information and

20  belief, SHERIFF BIANCO is currently being investigated by the Federal Bureau of

21  Investigation ("FBI") for his interference with a murder investigation arising from

22

23

24  [27] See "California Jails Are Trying to Keep Fentanyl Out, But Inmates Are Still Dying. In Riverside
   County, Fentanyl is Blamed in 38% of In-custody Deaths So Far This Year," (Mercury News,
25  September 26, 2022), available at: https://www.mercurynews.com/2022/09/26/southern-california-
   jails-trying-to-keep-fentanyl-out-but-inmates-are-still-dying/
26  [28] See "Kudos to Bonta for Investigating the Sheriff. Let's Hope He Moves Quickly" (The Desert
27  Sun, March 5, 2023), available at
   https://www.desertsun.com/story/opinion/editorials/2023/03/05/kudos-to-bonta-for-investigating-
28  riverside-county-sheriffs-department/69967829007/

1    two fentanyl overdoses in the City of Riverside which occurred on February 21, 2022

2    before many of the fentanyl overdoes in COUNTY Jails.

3        175.    On February 21, 2022, 22-year-old Sierra Riane Rangel and 21-year-old

4    Arrena Marie Mariotti died from fentanyl overdoses.[29]

5        176.    On February 24, 2022, murder charges were filed against Peter Luis

6    Mera Garcia.[30]  Upon information and belief, Peter Luis Mera Garcia is the son of a

7    senior level deputy at RIVERSIDE COUNTY SHERIFF'S DEPARTMENT.

8    Notably, the criminal case received wide public attention as this was the first time in

9    the COUNTY OF RIVERSIDE that a person had been charged with murder due to a

10    fentanyl death.

11        177.    Upon information and belief, the Riverside Police Department ("RPD")

12    Special Weapons and Tactics ("SWAT") was charged with executing the search

13    warrant of suspect Peter Luis Mera Garcia's home.

14        178.    Upon information and belief, suspect Peter Mera Garcia lived with his

15    parents, including his father who was a senior level deputy employed by the

16    RIVERSIDE COUNTY SHERIFF'S DEPARTMENT.

17        179.    Upon information and belief, Former RPD Sergeant, Frank Hoyos, was

18    one of the SWAT Team members assigned to execute the search warrant.

19        180.    Upon information and belief, prior to the execution of the search

20    warrant, RPD Chief of Police Larry Gonzalez was called by SHERIFF BIANCO for a

21    favor.  SHERIFF BIANCO asked Chief Gonzalez to provide him with the name of

22    the RCSD senior level deputy.

23        181.    Upon information and belief, RPD Chief Gonzalez proceeded to call

24    RPD Sergeant Jimmy Simmons, who had no involvement with the investigation of

25    this double homicide. RPD Chief Gonzalez informed Sgt. Simmons that he was

---

[29] *See* "Man Charged with Murder After 2 Riverside Woman Died from Fentanyl Overdoses," (The Press-Enterprise, April 28, 2022), available at https://www.pressenterprise.com/2022/04/28/man-charged-with-murder-after-2-riverside-women-died-from-fentanyl-overdoses/

[30] *Id.*

55

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1   calling him because SHERIFF BIANCO wanted to know the name of his deputy

2   whose son had been booked.  RPD Chief Gonzalez tasked Sgt. Simmons with the

3   assignment of finding out the name for SHERIFF BIANCO.

4       182.   Upon information and belief, RPD Sgt. Simmons secured the name of

5   the RCSD senior deputy and relayed the name to RPD Chief Gonzalez.

6       183.   Upon information and belief RPD Chief Gonzalez then relayed the name

7   to SHERIFF BIANCO.

8       184.   Upon information and belief, SHERIFF BIANCO then alerted his senior

9   level deputy that the RPD SWAT Team would be executing the search warrant on a

10  specific date and time and looking for very specific evidence in his home.

11      185.   Upon information and belief, the RCSD Senior Level Deputy convened

12  with his son, suspect Peter Luis Mera Garcia, and together they ensured that when the

13  RPD SWAT Team arrived at their home, they would find zero traces of a crime.

14      186.   Upon information and belief, when the RPD SWAT Team executed the

15  search warrant during the early morning hours, the SWAT Team was greeted by the

16  RCSD Senior Level Deputy who welcomed the SWAT Team into his home.  Indeed,

17  no evidence of a crime was found.

18      187.   Clearly, SHERIFF BIANCO is personally responsible for the fentanyl

19  crisis in RIVERSIDE COUNTY and has intentionally refused to make adequate

20  measures within his jail to prevent individuals from dying from fentanyl.

21                              **VII.**

22          **PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS**

23      **(Against individual Defendants SHERIFF CHAD BIANCO, EDWARD**

24      **DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO,**

25      **CHARLES TANGER, MARIO CORREA, DONALD MILLS, HOWARD**

26      **MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER,**

27      **SPENCER RUSTAD, JUSTIN WILLIAMS, JESSEE DEVERA, AARON**

28

**PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1-10)**

188.   Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

189.   Long before Mario Solis's death, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JUSTIN WILLIAMS, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10 knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

190.   Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JUSTIN WILLIAMS, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10 were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; inmate-on-inmate violence; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody, medical and mental health staff's deliberate indifference towards the safety and protection of inmates; the warnings from the neutrally-selected experts regarding failures amounting to constitutional violations; a Consent Decree directing Defendant RIVERSIDE COUNTY

SHERIFF's DEPARTMENT to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill its obligations under the Eighth and Fourteenth Amendments; and through a Settlement Agreement which the COUNTY voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT remedy all of the deficiencies in healthcare and disability accommodations alleged in the *Gray* class action complaint.

191.    Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, and DAVID HOLM, PATRICK LINDO, CHARLES TANGER, MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JUSTIN WILLIAMS, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10 have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

192.    The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

## VIII.

## PRE-DEATH PAIN AND SUFFERING DAMAGES ALLEGATIONS

**(Against All Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1-10)**

**SECOND AMENDED COMPLAINT FOR DAMAGES**

193. Pursuant to *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014), Plaintiff ESTATE OF MARIO SOLIS seeks damages for Mr. Solis's own pre-death pain and suffering prior to his death. Such damages are also recoverable under Plaintiffs' state law claims pursuant to Code of Civil Procedure Section 377.34(b). Based on the aforementioned factual summary, there can be no question that Mr. Solis suffered extensive pre-death pain and suffering during his five-month incarceration at the COUNTY Jails. From April 7, 2022 through September 3, 2022, Mr. Solis's mental health deteriorated and continued to worsen at the COUNTY Jails. Mr. Solis constantly engaged in self-harming and self-mutilating behavior as evidenced by the gruesome scene photographs, depicting both of Mr. Solis' wrists cut up with fresh wounds; relatively fresh lacerations marks on his neck; chunks of flesh missing from his hands and arms; and certainly the excruciating pain that came from asphyxiating[31] himself with two bags of soap, a tooth brush and finally a pencil with ruptured a vein in his neck. Mr. Solis also had to endure psychosis in the form of auditory and visual hallucinations; paranoia; sleeplessness; and humiliation through the various gassing acts he engaged in as a byproduct of his mental illness, these included using his own feces and urine to "gas" the dayroom and other inmates. Plaintiffs submit that the period for which pre-death pain and suffering began to occur was on April 7, 2022—the day Mr. Solis stepped foot into the COUNTY Jails following his arrest for the "robbery" of $12.06 worth of skittles at Food 4 Less.

///

///

///

///

///

---

[31] Asphyxiation is not an instantaneous death. Asphyxiation is tortuous and causes immense pain and suffering before actual death. In any event, Plaintiffs allege that Mr. Solis' pre-death pain and suffering began on April 7, 2022.

SECOND AMENDED COMPLAINT FOR DAMAGES

# IX.

## FIRST CAUSE OF ACTION

### Failure to Protect from Harm,

### Violation of the Fourteenth Amendment to the United States Constitution

### (Survival Action – 42 U.S.C. § 1983)

**By Plaintiff Estate of Mario Solis As Against Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6**

194.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

195.   Defendants COUNTY, RCSD,MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Mario Solis's position.

196.   Each Defendant could have taken action to prevent unnecessary harm to decedent Mario Solis but refused or failed to do so.

197.   Defendants COUNTY, RCSD, MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10, and each of them, intentional decisions regarding Mr. Solis' condition when he was confined in COUNTY jail. Given Mr. Solis' mental state and clear signs of suicidality, Defendants' placement of

Mr. Solis in certain conditions placed Mr. Solis at substantial risk of suffering serious

harm. Instead of ensuring that Mr. Solis could not self-mutilate or self-harm,

Defendants did not take any reasonable available measures to abate or reduce the

risks Mr. Solis faced, even though any reasonable person in the circumstances would

have appreciated the high degree of risk involved, or at the very least done something

to protect Mr. Solis from harm. Given such failures, the consequences of the

Defendant's conduct was obvious and by not taking such measures, Mr. Solis

suffered significant suffering and ultimately, died.

198.   Furthermore, by policy, procedure, and practice, Defendants COUNTY,

RCSD, MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN

DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD,

JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN,

JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1

through 10 deliberately disregarded the hazards and risks posed to persons

incarcerated at the CBDC, as alleged above.  Defendants failed to take any reasonable

steps to mitigate the obvious and well-known risks of harm that was attendant to

housing decedent Mario Solis at CBDC.

199.   Defendants including SHERIFF BIANCO, EDWARD DELGADO,

JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER

and DOES  8 through 10 also knew that deputies routinely failed to conduct required

welfare and safety checks at the COUNTY Jails, including CBDC, and failed to take

sufficient actions to correct this problem and ensure that necessary checks were

performed.

200.   Defendant SHERIFF BIANCO failed to take corrective action,

discipline, or remove the command staff at the COUNTY Jails, including CBDC,

who, upon information and belief, directed the deputies to falsify safety check logs

and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO

ratified their actions, and the practices used under his watch.

201.   Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious harm.

202.   Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER and DOES 8 through 10 failed to properly train and supervise RCSD custody, medical and mental health staff regarding policies, procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including CBDC.

203.   Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER and DOES 8 through 10's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

204.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER and DOES 8 through 10 ratified Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10's actions and inactions amounting to constitutional violations.

205.   Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10's failure to conduct the required safety check of decedent

1  Mario Solis's housing unit on the date of his death evidences deliberate indifference

2  to the risk of harm to decedent Mario Solis.

3       206.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES

4  KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER and

5  DOES 8 through 10 ratified Defendants  MARIO CORREA, DONALD MILLS,

6  HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES

7  GRIESENGER, SPENCER RUSTAD, JUSTIN WILLIAMS, JESSEE DEVERA,

8  AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-

9  MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10's failure to

10  conduct safety checks and falsification of logs.

11      207.   As a direct and proximate result of Defendants' conduct, the civil right

12  of Mario Solis, as protected by the Fourteenth Amendment of the United States

13  Constitution were violated.  Further, decedent Mario Solis experienced physical pain,

14  severe emotional distress, and mental anguish, as well as loss of his life and other

15  damages alleged herein.

16      208.   Defendants subjected decedent Mario Solis to their wrongful conduct,

17  depriving Decedent of rights described herein, knowingly, maliciously, and with

18  conscious and reckless disregard for whether the rights and safety of Decedent and

19  others would be violated by their acts and/or omissions.

20      209.   As a direct and proximate result of Defendants' acts and/or omissions as

21  set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

22      210.   The conduct of Defendants entitles Plaintiff to punitive damages and

23  penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not

24  seek punitive damages against Defendants COUNTY.

25      211.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

26  U.S.C. § 1988, and other applicable United States and California codes and laws.

27  ///

28  ///

SECOND AMENDED COMPLAINT FOR DAMAGES

1

## X.

## SECOND CAUSE OF ACTION

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Mario Solis As Against Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6**

212.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

213.   By the actions and omissions described above, Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU  and DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Mario Solis, through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to Mario Solis's serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

214.   By the actions and omissions described above, Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10, as alleged

herein, including but not limited to their failure to provide decedent Mario Solis with appropriate emergency medical and mental health care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care and life saving care to persons in their custody, constituted deliberate indifference to Mario Solis's serious medical and mental health needs, health, and safety.

215.   As a direct and proximate result of Defendants' conduct, the civil rights of Mario Solis, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Mario Solis experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

216.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

217.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

218.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

219.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///
///
///
///
///
///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

# XI.

## THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiff Sara Solis As Against Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6**

220.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

221.    The aforementioned acts and/or omissions of Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10 in being deliberately indifferent to decedent Mario Solis's protection, safety, and serious medical and mental health needs, violating decedent Mario Solis's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Mario Solis shocks the conscious and deprived Plaintiff SARA SOLIS of her liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

222.    All of the acts of Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ,

1  SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH

2  PUGH, HOA TRUC VU and DOES 1 through 10 and the persons involved were

3  done under color of state law.

4      223.   The acts and omissions of each Defendant deprived Plaintiff SARA

5  SOLIS of rights, privileges, and immunities secured by the Constitution and laws of

6  the United States, including but not limited to the Fourteenth Amendment by, among

7  other things, depriving Plaintiff of her rights to a parent-child relationship with

8  decedent Mario Solis without due process of law by their deliberate indifference in

9  denying Mario Solis protection and safety while incarcerated at CBDC and access to

10 medical care while suffering a medical emergency at CBDC.

11     224.   Defendants MARIO CORREA, DONALD MILLS, HOWARD

12 MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER,

13 SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA,

14 JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU

15 and DOES 1 through 10 and the other involved agents and employees acted pursuant

16 to expressly adopted official policies or longstanding practices or customs of the

17 COUNTY and RCSD. These include policies and longstanding practices or customs

18 of failing to provide persons in pretrial custody who are experiencing medical

19 emergencies access to medical care as stated above and incorporated herein.

20     225.   In addition, the training policies of the COUNTY and RCSD were not

21 adequate to train its deputies, agents and employees to handle the usual and recurring

22 situations with which they must deal with, including but not limited to encounters

23 with individuals in pretrial custody who are experiencing medical emergencies. These

24 Defendants and each of them knew that its failure to adequately train its COUNTY

25 custody, medical and mental health staff, including other agents and employees, to

26 interact with individuals suffering from medical emergencies made it highly

27 predictable that its custody, medical and mental health staff would engage in conduct

28 that would deprive persons such as decedent Mario Solis, and thus Plaintiff SARA

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  SOLIS, of her rights. These Defendants were thus deliberately indifferent to the

2  obvious consequences of their failure to train their deputies, agents and employees

3  adequately.

4    226.   Defendants COUNTY and RCSD's official policies and/or longstanding

5  practices or customs, including but not limited to its training policies, caused the

6  deprivation of the constitutional rights of Plaintiff SARA SOLIS and decedent Mario

7  Solis by each individual Defendant's official policies and/or longstanding practices or

8  customs are so closely related to Mario Solis's injuries and death and thus the

9  deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

10   227.   Defendant SHERIFF BIANCO, a final policymaker for the COUNTY

11  and RCSD, ratified the actions and omissions of Defendants MARIO CORREA,

12  DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER,

13  JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON

14  PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA,

15  SARAH PUGH, HOA TRUC VU and DOES 1 through 10, all of whom were

16  custody, medical and mental health staff at the COUNTY Jails, including CBDC, in

17  that he had knowledge of and made a deliberate choice to approve their unlawful acts

18  and omissions.

19   228.   As a direct and proximate result of Defendants' conduct, the civil rights

20  of Mario Solis, as protected by the Fourteenth Amendment of the United States

21  Constitution were violated.  Further, decedent Mario Solis experienced physical pain,

22  severe emotional distress, and mental anguish, as well as loss of his life and other

23  damages alleged herein.

24   229.   Defendants subjected Decedent to their wrongful conduct, depriving

25  Decedent of rights described herein, knowingly, maliciously, and with conscious and

26  reckless disregard for whether the rights and safety of Decedent and others would be

27  violated by their acts and/or omissions.

28  ///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1    230.    As a direct and proximate result of Defendants' acts and/or omissions as

2    set forth above, Plaintiffs sustained injuries and damages.

3    231.    The conduct of Defendants entitles Plaintiffs to punitive damages and

4    penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not

5    seek punitive damages against Defendants COUNTY.

6    232.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under

7    42 U.S.C. § 1988, and other applicable United States and California codes and laws.

8                                            **XII.**

9                            **FOURTH CAUSE OF ACTION**

10    **Municipal Policies, Customs, Practices Causing Constitutional Violations**

11                          **(*Monell* - 42 U.S.C. § 1983)**

12    **By Plaintiff Estate of Mario Solis As Against Defendants COUNTY OF**

13    **RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**

14    233.    Plaintiffs reallege and incorporate herein by reference each of the

15    preceding paragraphs of this complaint, and any subsequent paragraphs.

16    234.    At all times relevant hereto, the COUNTY custody, medical and mental

17    health staff were required to adhere to and enforce the following policy and

18    procedures:

19        a.    All COUNTY custody, medical and mental health staff must consider

20              suicide prevention as one of the highest priorities of service within the

21              correctional setting;

22        b.    All must work together to identify inmates at risk for suicide;

23        c.    All COUNTY custody, medical and mental health staff will have an

24              outlined program for responding to suicidal individuals;

25        d.    All COUNTY custody, medical and mental health staff must learn about

26              an inmates' high-risk periods immediately upon admission to a facility;

27        e.    All COUNTY custody, medical and mental health staff must learn about

28              an inmates' high-risk periods after adjudication, when the inmate is

                                              69

1    returned to a facility from court;

2    f.    All COUNTY custody, medical and mental health staff must learn about

3    an inmate's high-risk periods following the receipt of bad news

4    regarding self or family;

5    g.    All COUNTY custody, medical and mental health staff must learn about

6    an inmates' high-risk periods after suffering from some type or form of

7    humiliation, rejection or abuse;

8    h.    All COUNTY custody, medical and mental health staff will review

9    information of newly arriving inmates in this institution concerning

10    issues related to suicide;

11    i.    All COUNTY custody, medical and mental health staff conducting the

12    intake personal screen will be continuously alert to suicidal behavior;

13    j.    All COUNTY custody, medical and mental health staff will train their

14    staff who work with inmates to recognize verbal and behavioral cues that

15    indicate the potential for suicide;

16    k.    All COUNTY custody, medical and mental health staff who recognize

17    an inmate as being potentially suicidal are to request immediate

18    evaluation of the patient;

19    l.    All assessments of potentially suicidal inmates are to be conducted by

20    qualified mental health professionals, trained to determine an inmate's

21    level of suicide risk;

22    m.    Inmates who have been determined to be suicidal should be

23    placed/housed according to institutional policy and procedures for the

24    monitoring of such individuals within the correctional setting;

25    n.    Regular documented supervision should be maintained;

26    o.    Inmates who have been determined to be suicidal should be

27    placed/bound in the appropriate acute mental health housing;

28

70

**SECOND AMENDED COMPLAINT FOR DAMAGES**

p.   Suicidal inmates should not be housed alone, or left alone, unless constant supervision can be maintained. If constant supervision cannot be provided when needed, the inmate should be housed with another resident or in a dormitory and monitored by video camera by correctional staff;

q.   The rooms should be as nearly suicide proof as possible and constant supervision by a staff member is preferable;

r.   The procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities should be clearly outlined;

s.   Clear, current and accurate information regarding an inmate must be communicated between health care personnel and correctional personnel pursuant to the procedures of communication;

t.   The intervention plan on how to handle a suicide that is in progress, including appropriate first aid measures, should be clearly outlined;

u.   Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed suicides will be in place;

v.   Procedures for documenting the identification and monitoring of potential or attempted suicides will be detailed, as well as procedures for reporting a completed suicide;

w.   The suicide plan should specify the procedure for medical administrative review if a suicide does occur; and

x.   A formal psychiatric/suicide review should take place following all successful suicides, or significant suicide attempts.

235.   The unconstitutional actions and/or omissions of Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA,

AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

a.  To allow and encourage deputies to fail to properly utilize cell intercoms (e.g., call buttons and/or emergency buttons placed inside the cells for purposes of ensuring a two-way communication between inmates and custody staff) by deliberately ignoring inmates' attempts to communicate with custody staff through cell intercoms, in violation of the County of Riverside's written policies and state law;

b.  To allow and encourage deputies to fail to properly utilize the surveillance cameras placed within the housing modules for the purpose of ensuring proper and adequate custodial supervision and monitoring of inmates, in violation of the County of Riverside's written policies and state law;

c.  To allow and encourage deputies to fail to conduct proper and timely Title 15 welfare and safety checks by authorizing, permitting and/or encouraging a correctional environment wherein the infestation of dangerous hazards, such as illicit drugs, pose a substantial risk to the health and safety of inmates, in violation of the County of Riverside's written policies and state law;

d.  To allow and encourage investigators who are assigned to investigate the RCSD in-custody deaths at the COUNTY Jails to deliberately omit material facts pertaining to an inmates' death and/or manufacture

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1    witness recollection in an effort to shield custody and medical staff from

2    liability and discipline;

3    e.    To deny pretrial detainees and other inmates access to timely,

4    appropriate, competent, and necessary care for serious medical and

5    mental health needs, requiring such inmates in crisis to remain untreated

6    in jail instead of providing for their emergency medical needs;

7    f.    To allow and encourage deputies doing regular cell checks on inmates,

8    including inmates housed in safety cells and administrative segregation

9    cells, to fail to document their actual observations of the inmate's

10    condition and status, in violation of the County of Riverside's written

11    policies and state law;

12    g.    To allow and encourage inadequate and incompetent medical and mental

13    health care for jail inmates and arrestees;

14    h.    To hire, retain and contract for obviously inadequate medical and mental

15    health care for jail inmates and arrestees, including creating financial

16    incentives for custody, medical and mental health staff not to send

17    inmates with emergency medical needs to a hospital;

18    i.    To allow, encourage, and require medical and mental health care staff,

19    including licensed vocational nurses and registered nurses, to work

20    outside their legal scope of practice and without appropriate supervision;

21    j.    To fail to train custody staff that medical and mental health care staff,

22    including licensed vocational nurses, are not competent to assess or

23    decide inmates' medical conditions, medical needs, or whether the

24    inmate should be permitted to remain in the jail versus being sent to a

25    hospital;

26    k.    To allow, encourage, and require unlicensed, incompetent, inadequately

27    trained and/or inadequately supervised medical and mental health care

28    staff to assess inmates' medical condition, needs, and treatment,

1   including to decide whether or not to provide inmates with necessary
2   emergency care and hospitalization, including psychiatric
3   hospitalization;

4   l.   To fail to institute, require, and enforce proper and adequate training,
5        supervision, policies, and procedures concerning handling persons in
6        medical and mental health crisis;

7   m.   To cover up violations of constitutional rights by any or all of the
8        following:

9        i.    By failing to properly investigate and/or evaluate incidents of
10             violations of rights, including by unconstitutional medical and
11             mental health care at the jail;

12       ii.   By ignoring and/or failing to properly and adequately investigate
13             and/or investigate and discipline unconstitutional or unlawful
14             conduct by custody, medical and mental health staff;

15       iii.  By turning a blind eye to custody, medical and mental health staff
16             who direct, aid, and/or assist with the distribution of hazards,
17             including illicit drugs, into the Riverside County jails; and

18       iv.   By allowing, tolerating, and/or encouraging custody, medical and
19             mental health staff to: fail to file complete and accurate reports;
20             file false reports; make false statements; and/or obstruct or
21             interfere with investigations of unconstitutional or unlawful
22             conduct by withholding and/or concealing material information;

23  n.   To allow, tolerate, and/or encourage a "code of silence" among law
24       enforcement officers, RCSD personnel, custody, medical and mental
25       health staff at the jail whereby an officer or member of the RCSD,
26       medical staff or mental health staff does not provide adverse information
27       against a fellow officer, or member of the RCSD or the medical staff;

28

---

74

**SECOND AMENDED COMPLAINT FOR DAMAGES**

o.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

236.    The unconstitutional actions and/or omissions of Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER and DAVID HOLM:

a.    To fail to properly and adequately hire, train, supervise, and monitor custody, medical and mental health staff at the jails;

b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical and mental health crisis;

c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

d.    To cover up violations of constitutional rights by any or all of the following:

75

**SECOND AMENDED COMPLAINT FOR DAMAGES**

i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical and mental health crisis;

ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.    To allow, tolerate, and/or encourage a "code of silence" among custody, medical and mental health staff at the COUNTY jails whereby custody, medical and mental health staff does not provide adverse information against one another;

g.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

237.    Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD

1  DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO,

2  CHARLES TANGER and DOES 8 through 10, failed to properly hire, train, instruct,

3  monitor, supervise, evaluate, investigate, and discipline Defendants  MARIO

4  CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS

5  WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA,

6  AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-

7  MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10, and other

8  COUNTY and RCSD personnel, with deliberate indifference to the constitutional

9  rights of decedent Mario Solis, Plaintiffs and others in similar positions, as described

10  above, and therefore, those rights thereby violated.

11      238.   The unconstitutional actions and/or omissions of Defendants MARIO

12  CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS

13  WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA,

14  AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-

15  MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10, and other

16  RCSD custody, medical and mental health staff,  as described above, were approved,

17  tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD,

18  including Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES

19  KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER and

20  DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the

21  details of this incident have been revealed to the authorized policymakers within the

22  COUNTY and RCSD, and that such policymakers have direct knowledge of the fact

23  that the death of Mario Solis  was the result of deliberate indifference to his rights to

24  be protected and safe while in the custody of the COUNTY/RCSD, and his rights to

25  have access to medical care when suffering a medical emergency.  Notwithstanding

26  this knowledge, the authorized policymakers within the COUNTY and RCSD have

27  approved of the conduct and decisions of Defendants MARIO CORREA, DONALD

28  MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES

GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Mario Solis. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, and other policy-making officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused by COUNTY custody, medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody, medical and mental health staff and failed to institute new procedures and policy within the COUNTY and RCSD.

239.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of decedent Mario Solis's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Mario Solis to their wrongful conduct, depriving decedent Mario Solis of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Mario Solis, Plaintiffs and others would be violated by their acts and/or omissions.

240.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and

RCSD, as described above, decedent Mario Solis suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and RCSD.

## XIII.

## FIFTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff Estate of Mario Solis As Against Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS and DOES 7 through 10**

241.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

242.   At all material times, SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS  and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

243.   Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS  and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JUSTIN WILLIAMS, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-

MONTOYA, SARAH PUGH, HOA TRUC VU , and other COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs', decedent Mario Solis's, and others' constitutional rights, which were thereby violated as described above.

244.    As supervisors, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at CBDC and the rights to the serious medical and mental health needs of decedent Mario Solis. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Mario Solis of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Mario Solis of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Mario Solis's rights, and in fact did cause the violation of decedent Mario Solis's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Mario Solis' rights.

245.    The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS and DOES 8 through 10, respectively, with deliberate

1  indifference to Plaintiff's, decedent Mario Solis's, and others' constitutional rights,

2  which were thereby violated as described above.

3      246.   The unconstitutional actions and/or omissions of Defendants DOES

4  MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT,

5  THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JUSTIN

6  WILLIAMS, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE

7  DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and 1

8  through 10, and other COUNTY and RCSD personnel, as described above, were

9  approved, tolerated, and/or ratified by policymaking officers for the COUNTY and

10  RCSD, including Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO,

11  JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER,

12  JUSTIN WILLIAMS and DOES 8 through 10. Plaintiff is informed and believes and

13  thereon alleges that the details of this incident have been revealed to Defendants

14  SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID

15  HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS and DOES

16  8 through 10 and that such Defendant-policymakers have direct knowledge of the fact

17  that the death of decedent Mario Solis was not justified or necessary, but represented

18  deliberate indifference to his rights to be protected and safe while in the COUNTY's

19  custody and his rights to his serious medical and mental health needs, as set forth

20  above. Notwithstanding this knowledge, on information and belief, Defendants

21  SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID

22  HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS  and DOES

23  8 through 10 have approved and ratified of the conduct and decisions of Defendants

24  MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, ALAN DEWIT,

25  THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JUSTIN

26  WILLIAMS, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE

27  DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and

28  DOES 1 through 6 in this matter, and have made a deliberate choice to endorse such

conduct and decisions, and the basis for them, that resulted in the death of Mario Solis. By so doing, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

247.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS  and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Mario Solis's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

248.    Defendants subjected decedent Mario Solis to their wrongful conduct, depriving decedent Mario Solis of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Mario Solis and others would be violated by their acts and/or omissions.

249.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, PATRICK LINDO, CHARLES TANGER, JUSTIN WILLIAMS and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## XIV.

## SIXTH CAUSE OF ACTION

### Negligence – Wrongful Death

### Plaintiff Sara Solis As Against All Defendants and DOES 1 through 10

250.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

251.   At all times, Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, CHARLES TANGER, PATRICK LINDO, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU  and DOES 1 through 10 owed Plaintiffs and decedent Mario Solis the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

252.   At all times, these Defendants owed Plaintiffs and decedent Mario Solis the duty to act with reasonable care.

253.   These general duties of reasonable care and due care owed to Plaintiffs and decedent Mario Solis by these Defendants include but are not limited to the following specific obligations:

a.     To summon, or transport Decedent to, necessary and appropriate emergency medical and mental health care;

b.     To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

**SECOND AMENDED COMPLAINT FOR DAMAGES**

c.     To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

d.     To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

e.     To properly utilize cell intercoms (e.g., call buttons and/or emergency buttons placed inside the cells for purposes of ensuring a two-way communication between inmates and custody staff) by responding to inmates' attempts to communicate with custody staff through cell intercoms;

f.     To properly utilize the surveillance cameras placed within the housing modules for the purpose of ensuring proper and adequate custodial supervision and monitoring of inmates;

g.     To conduct proper, thorough, and truthful internal investigations on behalf of the RCSD into in-custody deaths at the COUNTY Jails;

h.     To refrain from abusing their authority granted them by law; and

i.     To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

254.   Defendants  MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, CHARLES TANGER, PATRICK LINDO, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Mario Solis.

///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

255.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

256.   As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Mario Solis sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## XV.

## SEVENTH CAUSE OF ACTION

### Negligence – Medical Malpractice

**Plaintiff Estate of Mario Solis As Against Defendants JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6**

257.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

258.   Decedent Mario Solis was under the care and treatment of Defendants JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU and DOES 1 through 6 , all of whom were COUNTY medical staff assigned to the COUNTY Jails, including CBDC, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Mario Solis to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care;  carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and

1    unskillfully failed to possess and exercise that degree of skill and knowledge

2    ordinarily possessed and exercised by others in the same profession and in the same

3    locality as Defendants for the benefit of their patient and dependent pre-trial detainee

4    Mario Solis.

5    259.    Defendant supervisors and each of them failed to supervise, train and

6    monitor their subordinates, to maintain proper supervision, classification and staffing,

7    to timely provide decedent Mario Solis emergency medical and mental health care,

8    failed to provide adequate and competent staffing, and to ensure the care and

9    treatment ordered for decedent Mario Solis was provided.

10    260.    As a direct and legal result of the aforesaid negligence and carelessness

11    of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and

12    against these Defendants, and each of them, are entitled to compensatory damages

13    and as applicable to this claim for Medical Negligence, to be proven at time of trial.

14    261.    Defendants COUNTY and RCSD are vicariously liable for the violations

15    of state law and conduct of their officers, deputies, employees, and agents, including

16    individual named defendants, under California Government Code § 815.2.

**XVI.**

**EIGHTH CAUSE OF ACTION**

**Violation of California Government Code § 845.6**

**Plaintiff Estate of Mario Solis As Against All Defendants**

**and DOES 1 through 10**

22    262.    Plaintiff realleges and incorporates herein by reference each of the

23    preceding paragraphs of this complaint, and any subsequent paragraphs.

24    263.    Defendants MARIO CORREA, DONALD MILLS, HOWARD

25    MCNEIL, CHARLES TANGER, PATRICK LINDO, ALAN DEWIT, THOMAS

26    WALKER, JAMES GRIESENGER, SPENCER RUSTAD, JESSEE DEVERA,

27    AARON PEREZ, SHIRLEY BAUTISTA, JUNE DORESTIN, JOANNA RIOS-

28    MONTOYA, SARAH PUGH, HOA TRUC VU  and DOES 1 through 10 knew that

SECOND AMENDED COMPLAINT FOR DAMAGES

Mario Solis was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and RCSD, knowing and/or having reason to know of decedent Mario Solis's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

264. Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

265. As a direct and proximate result of the aforementioned acts of these Defendants, decedent Mario Solis was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## XVII.

## <u>NINTH CAUSE OF ACTION</u>

### Violation of California Civil Code §52.1

### (Tom Bane Act – Survival Action)

### Plaintiff Estate of Mario Solis As Against All Defendants

### and DOES 1 through 10

266. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

267. Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

268. By their acts, omissions, customs, and policies, Defendants MARIO CORREA, DONALD MILLS, HOWARD MCNEIL, CHARLES TANGER,

1   PATRICK LINDO, ALAN DEWIT, THOMAS WALKER, JAMES GRIESENGER,

2   SPENCER RUSTAD, JESSEE DEVERA, AARON PEREZ, SHIRLEY BAUTISTA,

3   JUNE DORESTIN, JOANNA RIOS-MONTOYA, SARAH PUGH, HOA TRUC VU

4   and DOES 1 through 10, each acting in concert/conspiracy, as described above,

5   while decedent Mario Solis was in custody, and by threat, intimidation, and/or

6   coercion, interfered with, attempted to interfere with, and violated Mario Solis's

7   rights under California Civil Code § 52.1 and under the United States Constitution

8   and California Constitution as follows:

        a.    The right to be free from objectively unreasonable treatment and

               deliberate indifference to Decedent's serious medical needs while in

               custody as a pretrial detainee as secured by the Fourth and/or Fourteenth

               Amendments to the United States Constitution and by California

               Constitution, Article 1, §§ 7 and 13;

        b.    The right for the familial association to be free from government

               interference as secured by the Fourteenth Amendments to the United

               States Constitution;

        c.    The right to enjoy and defend life and liberty; acquire, possess, and

               protect property; and pursue and obtain safety, happiness, and privacy,

               as secured by the California Constitution, Article 1, § 1; and

        d.    The right to emergency medical and mental health care as required by

               California Government Code §845.6.

       269.   Defendants' violations of decedent Mario Solis's due process rights with

deliberate indifference, in and of themselves constitute violations of the Bane Act.1[32]

Alternatively, separate from, and above and beyond, Defendants' attempted

---

[32] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at \*23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at \*58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  interference, interference with, and violation of Mario Solis's rights as described
2  above, Defendants violated Mario Solis's rights by the following conduct constituting
3  threat, intimidation, or coercion:

    a.  With deliberate indifference to Decedent's serious medical and mental
        health needs, suffering, and risk of grave harm including death,
        depriving Decedent of necessary, life-saving care for his medical needs;

    b.  With deliberate indifference to hazards that posed a risk to pretrial
        detainees, such as Decedent;

    c.  Subjecting Decedent to ongoing violations of his rights to prompt care
        for his serious medical and mental health needs over days, causing
        immense and needless suffering, intimidation, coercion, and threats to
        his life and well-being;

    d.  Deliberately contracting for and causing the provision of inadequate and
        incompetent medical health care to Riverside County jail detainees and
        inmates;

    e.  Requiring medical and mental health staff to work outside their scope of
        practice, and conduct assessments, triage, and make medical and housing
        decisions for patients, including Decedent, they are not competent to
        make; and

    f.  Instituting and maintaining the unconstitutional customs, policies, and
        practices described herein, when it was obvious that in doing so,
        individuals such as Decedent would be subjected to violence, threat,
        intimidation, coercion, and ongoing violations of rights as Decedent was
        here.

    270.  The threat, intimidation, and coercion described herein were not
necessary or inherent to Defendants' violation of decedent Mario Solis's rights, or to
any legitimate and lawful jail or law enforcement activity.

///

271.   Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

272.   Further, each Defendant violated decedent Mario Solis's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

273.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

274.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Mario Solis's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## XVIII.

## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Plaintiff Sara Solis As Against Defendant SHERIFF CHAD BIANCO

275.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

276.   On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died."

277.   Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families, including Plaintiffs, and

1  their deceased loved ones, posing the following offensive rhetorical questions to the

2  Facebook community and calling the Matus family attorney, Christian Contreras, a

3  "bad" person:

4      a.    Did they demand that their family members not commit suicide or

5           consume drugs while they were in custody?

6      b.    Did they ever demand that their family members not commit crimes in

7           the first place?

8      c.    Did their parents ever demand they take responsibility for their own

9           actions?

10     d.    Do they ever think they played a huge part in the situation they find

11          themselves in, other than the personal actions of their deceased loved

12          one?

13    278.   Indeed, as recent as January 2, 2024, SHERIFF BIANCO has continued

14  to chastise families who have lost their loved ones due to their struggles with mental

15  illness and suicidal tendencies.  In response to the filing of the federal civil rights

16  action *Estate of Alicia Upton, et al. v. County of Riverside, Riverside County Sheriff's*

17  *Department, et al.*, SHERIFF BIANCO issued the following insulting statement to

18  Ms. Upton's family:

19     a.    "This is nothing more than someone wanting money."

20     b.    "We're still in the same place where there's no personal accountability

21          for anything - just sue the person with the deepest pockets."

22     c.    "***To say we're responsible for a suicide is silly***." (Emphasis added.)[33]

23    279.   Defendant SHERIFF BIANCO posted these comments on the public

24  form with the intent to harass and cause Plaintiff Sara Solis mental anguish and

25

26  [33] *See* "Riverside County sheriff slapped with another lawsuit over inmate death Sheriff Chad
   Bianco says the suit by the parents of 21-year-old Alicia Upton represents 'nothing more than
27  someone wanting money' (Press Enterprise, January 2, 2024), available at:
   https://www.pressenterprise.com/2024/01/02/riverside-county-sheriff-slapped-with-another-lawsuit-
28  over-inmate-death/

**SECOND AMENDED COMPLAINT FOR DAMAGES**

turmoil.   Likewise, SHERIFF BIANCO reported those statements to the Press Enterprise knowing that the Press Enterprise would widely disseminate an article on the web and social media, particularly given the harassing nature of his comments. He knew that given the public forum nature of the Facebook post and the Press Enterprise newspaper, that the family of Mario Solis, including the present Plaintiffs, would read said harassing and offensive comments and that his actions would cause them great mental/psychological pain and anguish.  Notwithstanding, SHERIFF BIANCO deliberately engaged in this harassing and confrontational behavior.

280.   It was his intention to cause them great mental/psychological pain and anguish, and he did so through these actions.

281.   Plaintiff Sara Solis seek compensatory damages incurred as a proximate result of Defendant SHERIFF BIANCO's deliberate and intentional misconduct. Plaintiffs have suffered great emotional harm and will continue to suffer such harm in the future as a direct and proximate result of the aforementioned acts or omissions by Defendant SHERIFF BIANCO.

282.   The acts or omissions of Defendant SHERIFF CHAD BIANCO, as alleged above were willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of exemplary and punitive damages against him.

283.    Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

284.   As a direct and proximate result of these Defendant SHERIFF BIANCO's intentional conduct, Plaintiff Sara Solis sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

///

///

**SECOND AMENDED COMPLAINT FOR DAMAGES**

## XIX.

## ELEVENTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C § 2201)

### Plaintiffs As Against All Defendants

285.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

286.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

287.   Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

## XX.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.   Wrongful death of Mario Solis, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.   Mario Solis's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.   Violation of Mario Solis's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.   Mario Solis's loss of life, pursuant to federal civil rights law;

F.   Mario Solis's conscious pain, suffering, and disfigurement, pursuant to

SECOND AMENDED COMPLAINT FOR DAMAGES

1    federal civil rights law;

2    G.    General Damages, including wrongful death and survival damages, in

3    excess of the mandatory amount for jurisdiction in the Unlimited

4    Superior Court;

5    H.    Non-Economic Damages, including wrongful death and survival

6    damages, according to proof plus all further and proper relief;

7    I.    Punitive damages as to the individual defendants;

8    J.    Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 &

9    private attorney general doctrine);

10    K.    A multiplier of damages, including treble damages, and penalties under

11    the Tom Bane Act;

12    L.    Interest; and

13    M.    All other damages, penalties, costs, interest, and attorneys' fees as

14    allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil

15    Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil

16    Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California

17    and/or federal law.

18    Dated: May 28, 2024                GASTÉLUM LAW, APC

19                                       By: _Denisse O. Gastélum_

20                                       Denisse O. Gastélum, Esq.
                                         Attorneys for Plaintiffs,
21                                       ESTATE OF MARIO SOLIS, by and through
22                                       successor in interest, Sara Solis; SARA SOLIS,
                                         individually
23
      Dated: May 28, 2024               **LAW OFFICES OF CHRISTIAN CONTRERAS**
24                                       **A PROFESSIONAL LAW CORPORATION**

25                                       By: _Christian Contreras_

26                                       Christian Contreras, Esq.
                                         Attorneys for Plaintiffs,
27                                       ESTATE OF MARIO SOLIS, by and through
                                         successor in interest, Sara Solis; SARA SOLIS,
28                                       individually

94

**SECOND AMENDED COMPLAINT FOR DAMAGES**

# **DEMAND FOR JURY TRIAL**

Plaintiffs, ESTATE OF MARIO SOLIS, by and through successor in interest, Sara Solis; and SARA SOLIS, individually, hereby make a demand for a jury trial in this action.


Dated: May 28, 2024                    GASTÉLUM LAW, APC

                                       By: _Denisse O. Gastélum_
                                       Denisse O. Gastélum, Esq.
                                       Attorneys for Plaintiffs,
                                       ESTATE OF MARIO SOLIS, by and through
                                       successor in interest, Sara Solis; SARA SOLIS,
                                       individually


Dated: May 28, 2024                    **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                       **A PROFESSIONAL LAW CORPORATION**

                                       By: _Christian Contreras_
                                       Christian Contreras, Esq.
                                       Attorneys for Plaintiffs,
                                       ESTATE OF MARIO SOLIS, by and through
                                       successor in interest, Sara Solis; SARA SOLIS,
                                       individually

**SECOND AMENDED COMPLAINT FOR DAMAGES**