Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Caylin W. Jones (SBN 327829)
E-mail: cjones@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE, SHIRLEY BAUTISTA, MARIO CORREA, JESSE DEVERA, JUNE DORESTIN, HOWARD MCNEIL, DONALD MILLS, AARON PEREZ, and JOANNA RIOS-MONTOYA

JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MARIO SOLIS, by and through successor in interest, Sara Solis; SARA SOLIS, individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; MARIO CORREA; DONALD MILLS; HOWARD MCNEIL; CHARLES TANGER; PATRICK LINDO; ALAN DEWIT; THOMAS WALKER; JAMES GRIESENGER; SPENCER RUSTAD; JUSTIN WILLIAMS; JESSEE DEVERA; AARON PEREZ; SHIRLEY BAUTISTA; JUNE DORESTIN; JOANNA RIOS-MONTOYA; SARAH PUGH; HOA TRUC VU; and DOES 1 through 10, individually, jointly and severally, <br><br> Defendants. | **CASE NO.: 5:23-cv-00989-HDV-SP** <br><br> *[Assigned to the Hon. Hernan D. Vera, District Judge; Referred to the Hon. Sheri Pym, Magistrate Judge]* <br><br> **[PROPOSED] JUDGMENT AFTER JURY VERDICT** <br><br><br><br><br><br> Pre-Trial Conf. : January 6, 2026 <br> Trial Date : January 27, 2026 |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4925-9011-4957 v1

1

Case No. 5:23-cv-00989-HDV-SP
[PROPOSED] JUDGMENT AFTER JURY VERDICT

Defendants submit their Proposed Judgment, as follows.

On April 10, 2025, Defendants filed a Motion for Summary Judgment in the above captioned matter. On June 23, 2025, the Court issued an Order on Defendants' Motion for Summary Judgment, granting summary judgment in favor of Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, PATRICK LINDO, CHARLES TANGER, and JUSTIN WILLIAMS against Plaintiffs ESTATE OF MARIO SOLIS, by and through successor in interest, Sara Solis and SARA SOLIS, individually. A copy of the Court's Order on Summary Judgment is attached as **Exhibit A**. The Court hereby enters judgment in favor of Defendants Sheriff Chad Bianco, Edward Delgado, James Krachmer, Patrick Lindo, Charles Tanger, and Justin Williams and against Plaintiffs Estate of Mario Solis, by and through Successor In Interest, Sara Solis and Sara Solis, individually.

On February 4, 2026, in the matter captioned above, at the conclusion of trial on claims for relief brought by Plaintiffs ESTATE OF MARIO SOLIS, by and through successor in interest, Sara Solis and SARA SOLIS, individually against Defendants COUNTY OF RIVERSIDE, SHIRLEY BAUTISTA, MARIO CORREA, JESSE DEVERA, JUNE DORESTIN, HOWARD MCNEIL, DONALD MILLS, AARON PEREZ, and JOANNA RIOS-MONTOYA, a duly impaneled and sworn jury rendered the verdict set forth in the Verdict Form appended hereto as **Exhibit B**. The verdict, having been published to the jury and to the parties and their counsel, the Court having accepted and filed the verdict, and the Court having polled the jury, and the jury having confirmed that this was their verdict, the Court hereby enters judgment in favor of Defendants County of Riverside, Shirley Bautista, Mario Correa, Jesse Devera, June Dorestin, Howard McNeil, Donald Mills, Aaron Perez, and Joanna Rios-Montoya and against Plaintiffs Estate Of Mario Solis, by and through Successor In Interest, Sara Solis and Sara Solis, individually.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4925-9011-4957 v1

2

Case No. 5:23-cv-00989-HDV-SP
[PROPOSED] JUDGMENT AFTER JURY VERDICT

Costs of suit are to be awarded to Defendants County of Riverside, Sheriff Chad Bianco, Edward Delgado, James Krachmer, Patrick Lindo, Charles Tanger, Justin Williams, Shirley Bautista, Mario Correa, Jesse Devera, June Dorestin, Howard McNeil, Donald Mills, Aaron Perez, and Joanna Rios-Montoya, jointly and severally, against Plaintiffs Estate of Mario Solis, by and through Successor in Interest, Sara Solis and Sara Solis, individually, pursuant to a duly filed Memorandum of Costs.

**IT IS SO ORDERED.**

DATED:    02/24/26                    By: _____

HON. HERNAN D. VERA
U.S. District Court Judge

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4925-9011-4957 v1

3

Case No. 5:23-cv-00989-HDV-SP
[PROPOSED] JUDGMENT AFTER JURY VERDICT

# EXHIBIT A
# (Order on Motion for Summary Judgment)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4925-9011-4957 v1

4

Case No. 5:23-cv-00989-HDV-SP
[PROPOSED] JUDGMENT AFTER JURY
VERDICT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MARIO SOLIS, et al., | Case No. 5:23-cv-00989-HDV-(SPx) |
| Plaintiffs, | **ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT [116, 119]** |
| v. | |
| COUNTY OF RIVERSIDE, et al., | |
| Defendants. | |

1

## I.   INTRODUCTION

This case concerns the death of Mario Solis while in pretrial custody with the Riverside County Sheriff's Department.  Plaintiff, the estate of Mr. Solis, alleges that medical and custodial staff were deliberately indifferent to Mr. Solis's psychiatric needs and failed to protect him despite evidence of severe mental health issues.

Before the Court are the parties' cross motions for summary judgment.  Defendants' motion seeks summary judgment or partial summary judgment on most of Plaintiff's claims on a litany of grounds.  Joint Brief Regarding Defendants' Motion and Memorandum for Summary Judgment ("DMSJ") [Dkt. No. 116].  Conversely, Plaintiff seeks partial summary judgment on two elements of the *Monell* claim against the County.  Joint Brief Regarding Plaintiff's Motion and Memorandum for Summary Adjudication ("PMSJ") [Dkt. No. 119].  For the reasons discussed below the DMSJ is *granted in part* and *denied in part*, and the PMSJ is *denied*.

## II.   BACKGROUND

On or about April 8, 2022, decedent Mario Solis was booked into Robert Presley Detention Center ("RPDC") after being charged with second degree robbery.  Joint Statement of Defendants' Uncontroverted Facts & Conclusions of Law re: DMSJ ("JS-DMSJ") ¶ 1 [Dkt. No. 116-1].  At Solis's mental health evaluation the day he was booked, his mental health rating was ranked as "moderate" with a history of schizoaffective disorder depressive type, major depressive disorder, unspecified mood disorder, general anxiety, and alcohol abuse.  *Id.* ¶¶ 3–4, 81.

### A.  Larry D. Smith Correctional Facility – Safety Cells

On April 16, 2022, Solis was transferred to the Larry D. Smith Correctional Facility ("LSCF").  *Id.* ¶ 5.  From April 16 to 28, 2022, Solis began exhibiting unusual behavior, such as speaking to himself and yelling racial slurs at fellow inmates.  *Id.* ¶ 6.  After this was observed by correctional staff, Solis's mental health rating was reclassified as "severe."  *Id.* ¶ 7.

On May 25, 2022, Solis was placed in a safety cell to protect him from being harmed by other inmates after his continued use of racial slurs.  *Id.* ¶ 8.  A "safety cell" is a temporary placement used for inmates who "appear to be a danger to themselves or others or appear to be gravely disabled," and for "those who exhibit bizarre behavior that results in the destruction of

2

property/cell furnishings, or who reveal an apparent intent to cause injury to themselves, others." JS-DMSJ ¶ 82; DMSJ, Joint Evidentiary Appendix ("JA-DMSJ"), Ex. 1 Riverside County Sheriff's Department ("RCSD") Corrections Division Policy Manual ("RCSD Manual"), No. 504.24 ("Safety Cells") at 1 [Dkt. No. 116-31]. Persons placed in a safety cell are entitled to an examination by mental health staff within two hours to assess the appropriateness of using a safety cell, with additional assessments for continued retention at least every four hours. Id. at 4. Per County policy, individuals "will not be housed in a safety cell longer than 12 hours without being examined by mental health staff." Id. If the individual "remains in the safety cell for a period of 48 hours and is not cleared to return to housing…[t]he incarcerated person shall be taken to [Riverside University Health System Medical Center ("RUHS")] or a local hospital for evaluation." Id.

Solis was shuttled in and out of safety cells for several months. On May 29, 2022, Solis was placed in a safety cell for being a danger to himself and others, due to his erratic behavior. Id. ¶ 9. Solis was confined to a safety cell on June 23 after threatening to stab two other inmates. Id. ¶ 11. Solis was returned to a safety cell two more times (on June 25 and June 27) for, again, being a danger to himself or others. Id. ¶¶ 12, 13. And on July 1, 2022, Solis was placed in safety cell for the sixth time, this time for wiping his feces on every door of the bottom tier of the Dayroom and masturbating during an assessment performed by a clinical therapist. Id. ¶¶ 14, 96.

Apparently six stints in the safety cell was finally enough for Defendants to seek additional care. On July 2, instead of being released back to the general population, Solis was sent to the Riverside University Health System ("RUHS"), Detention Care Unit ("RUHS-DCU") for a 72-hour mental health hold where he received treatment.[1] Id. ¶ 15. Five days later, he was transferred from RUHS-DCU to RPDC and again received the mental health rating of "severe." Id. ¶ 16.

The carousel continued. On July 9, Solis was transferred **back** to LSCF and subsequently placed in a safety cell after reporting that he was "suicidal," was "gonna stab [him]self with a

---

[1] "If it appears to the person in charge of a county jail, [or] city jail…that a person in custody in that jail…may have a mental health disorder, that person or judge may cause the prisoner to be taken to a facility for 72-hour treatment and evaluation…." Cal. Penal Code § 4011.6.

pencil," and asked other inmates for pencils  *Id.* ¶¶ 19, 98; JA-DMSJ, Ex. B ("Medical Records") at COR 001229–33 [Dkt. No. 116-5].  A mere two days later, Solis was placed in a safety cell for the *eighth* time, this time for grabbing a broom and threatening "all the deputies and the other inmates." JS-DMSJ ¶ 22; Medical Records at COR 001344.  On July 13, 2022, Solis was once again relegated to RUHS-DCU for a 72-hour mental health hold.  JS-DMSJ ¶ 21.

On July 14, 2022, Solis was returned to RPDC and was given (again) the mental health rating of "severe."  *Id.* ¶ 22.  A few days later, Solis was transferred back to LSCF.  *Id.* ¶ 23.  Less than a month passed when Solis was sent to a safety cell for the *ninth* time, this time for throwing a container of his urine at other inmates and smearing his feces in the dayroom.  *Id.* ¶¶ 24–25, 102. When asked about the urine throwing, Solis denied symptoms of psychosis while simultaneously appearing to be exhibiting symptoms of psychosis, including responding to internal stimuli, looking around and being easily distracted.  *Id.* ¶ 103.  On August 10, 2022, Solis was seen by a psychiatrist, Defendant Dr. Jesse De Vera ("Dr. De Vera"), who had evaluated him previously on May 3, June 8, and July 11, 12[2], and 20.  *Id.* ¶ 104.  Dr. De Vera determined Solis was suffering from delusions and hallucinations, and he presented as "still very psychotic."  *Id.* ¶ 106.

### B.  Cois M. Byrd Detention Center – Administrative Housing

On August 11, 2022, due to the repeated behavioral issues that led to the nine safety cell placements, Solis was transferred to the Cois M. Byrd Detention Center's Administrative Mental Health Housing ("CBDC"), where he was placed in a cell by himself.  *Id.* ¶ 26. Administrative Mental Health Housing is intended for "the most severely mentally ill who are a danger to themselves and who are the most unpredictable to other inmates."  *Id.* ¶ 125; JA-DMSJ, Ex. F Deposition Donald Charles Mills ("Mills Depo.") at 67:9–20 [Dkt. No. 116-9].  Placement in administrative housing is a considered a "high risk time" for suicide risk.  JS-DMSJ ¶ 128; JA-DMSJ, Ex. 3 RUHS Behavioral Health Detention Services Policy Manual ("RUHS Manual"), Suicide Prevention Program at COR 006118 [Dkt. No. 116-33].  Inmates in administrative housing

---

[2] The evaluation by Dr. De Vera on July 12 is what led to Solis's second 72-hour hold at RUHS-DCU.  JS-DMSJ ¶ 109.

also receive increased therapy, additional visits from therapists, and more monitoring generally due in part to the particular negative effect this housing can have on the mental health of inmates.  JS-DMSJ ¶¶ 131, 132.  Severely mentally ill patients can experience an exacerbation of symptoms when placed in single-cell administrative housing.  *Id.* ¶ 158;  JA-DMSJ, Ex. E Deposition of Aaron Perez ("Perez Depo.") at 37:13–19 [Dkt. No. 116-8].  For these reasons, administrative housing is the intervention of last resort.  JS-DMSJ ¶ 177; Perez Depo. at 32:21–33:21.

On August 12 and 13, 2022, Solis was seen by a clinical therapist, Defendant Junise Dorestin, at which time Solis denied being a danger to himself or others.  *Id.* ¶¶ 27, 28.  The following day, Solis was seen by different clinical therapist, Steven Bradbury, and Solis again denied being a danger to himself or others.  *Id.* ¶ 29.  Dorestin visited Solis over the next few days, and Solis did not present outwardly with symptoms of psychosis.  *Id.* ¶¶ 30, 31.

On August 19, 2022, behavioral health specialist Defendant Joanna Rios-Montoya visited Solis and provided Solis with a coping skills packet that, inexplicably, ***included a golf pencil***.  *Id.* ¶ 32.  That same day, Dorestin visited him again to conduct a wellness check and did not observe any distress or symptoms of psychosis.  *Id.* ¶ 33.  Dorestin visited two times the next week, and did not observe any distress or symptoms of psychosis.  *Id.* ¶¶ 34, 35.  The week after that, Rios-Montoya visited Solis and gave him another coping skills packet that (once again, and against every indicia of common sense) included a golf pencil.  *Id.* ¶ 38.  The same day, Solis was also visited by Bradbury for a pill call, at which time Solis took his medication.  *Id.* ¶ 39.  On August 31, 2022, Solis was visited by a nurse, Defendant Sarah Pugh, and she observed Solis take his medication.  *Id.* ¶ 40.  On September 1, 2022, Solis was seen by a different nurse, Defendant Hoai Truc Vu, and during that visit Solis refused to take his medication.  *Id.* ¶ 41. The same day, Dorestin visited Solis.  *Id.* ¶ 42.  During that visit Solis did not present outwardly with symptoms of psychosis, but he ignored Dorestin when she tried to engage him in conversation.  *Id.*

On September 2, 2022, Pugh visited Solis at 3:37 A.M., at which time Solis refused to take his medication.[3]  *Id.* ¶ 43.  Later that day, at 7:18 P.M., Dorestin visited Solis, who was cooperative

---

[3] Also on September 2, at 11:31 A.M., the Superior Court in the County of Riverside declared Mr.

and did not appear to be in distress. *Id.* ¶ 44. At 10:39 P.M., Solis was visited by a new nurse, Defendant Shirley Bautista, at which time Solis again refused his medication. *Id.* ¶ 45. At 10:51 P.M., a correctional officer, Defendant Howard McNeil, conducted a security check of the area where Solis was housed. *Id.* ¶ 46. McNeil completed his check at 11:26 P.M. *Id.* An hour later at 12:26 A.M. on September 3, 2022, McNeil logged another security check of the same area, but it was later determined to have been conducted by Defendant correctional officers Mario Correa and Donald Mills. *Id.* ¶¶ 47, 49.

At approximately 12:48 A.M., Correa conducted a safety check of Solis's cell by peering through the window of his cell, and he saw Solis hunched over with his back against the window of the cell. *Id.* ¶¶ 50, 51. The cell had accumulated pools of toilet water littered with trash. JA-DMSJ, Ex. 7 ("Cell Picture") [Dkt. No. 37]. Correa called Solis's name between three and five times, but Solis was unresponsive. *Id.* ¶ 52. Correa requested Mills join him at Solis's cell, at which point they each tried communicating with Solis. *Id.* ¶¶ 53, 54. Solis remained unresponsive. *Id.* ¶ 54. While they did not receive a response, Mills and Correa believed they saw what looked like Solis's chest moving and interpreted it as breathing, so they moved on with their safety check at 12:51 A.M. *Id.* ¶¶ 55, 56.

At 12:58 A.M., Correa and Mills decided to return to Solis's cell and found Solis in an unchanged position, still unresponsive and with no sign of movement. *Id.* ¶¶ 58, 59. At 1:00 A.M. Correa broadcasted a "man down" alert, which summoned supervisory staff and medical personnel. *Id.* ¶ 60. At 1:02 A.M., Solis's cell was opened. *Id.* ¶ 61. Upon opening the cell door between 1:03 A.M. and 1:04 A.M., Solis fell onto the floor with discolored lips and a pale complexion. *Id.* ¶ 62. Correa began to perform CPR. *Id.* ¶ 63. Medical staff arrived and began to perform additional lifesaving measures. *Id.* ¶¶ 65–67. At 1:39 A.M., Solis was pronounced dead. *Id.* ¶ 68. On September 9, 2022, Dr. Louis A. Pena performed Solis's autopsy. *Id.* ¶ 69. Solis's cause of death was asphyxiation by foreign objects: a golf pencil, a toothbrush, two small plastic bags with soap,

---

Solis incompetent and committed him to the custody of the California Department of State Hospitals. PMSJ, Joint Statement of Plaintiffs' Uncontroverted Facts ("JS-PMSJ") ¶ 64 [Dkt. No. 119-1].

6

and a plastic bottle cap. JA-DMSJ, Ex. R Deposition of Louis A. Pena, M.D. ("Dr. Pena Depo.") at 63:15–66:9 [Dkt. No. 116-21]. The pencil had also punctured his trachea. JS-DMSJ ¶ 70.

Plaintiff Sara Solis—on behalf of the estate of Solis as well as individually as his mother (collectively, "Plaintiff")—filed the original complaint on May 31, 2023 [Dkt. No. 1]. On August 25, 2023, Plaintiff filed her first amended complaint [Dkt. No. 16]. On May 28, 2024, Plaintiff filed a second amended complaint, the operative complaint in this case. Second Amended Complaint ("SAC") [Dkt. No. 39]. The SAC asserts various federal and state law claims against defendants the County of Riverside ("County"), Riverside County Sheriff's Department ("RCSD"), Sheriff Chad Bianco, Edward Delgado, James Krachmer, David Holm, Correa, Mills, McNeil, Charles Tanger, Patrick Lindo, Alan Dewit, Thomas Walker, James Griesenger, Spencer Rustad, Justin Williams, Jessee Devera, Aaron Perez, Bautista, Dorestin, Rios-Montoya, Pugh, and Vu.[4] *Id.*

On April 10, 2025, Defendants filed a motion seeking summary judgment or partial summary judgment. Joint Brief Regarding Defendants' Motion and Memorandum for Summary Judgment ("DMSJ") [Dkt. No. 116]. Also on April 10, Plaintiff filed her motion seeking partial summary judgment as to her *Monell* claim under Section 1983 against the County. Joint Brief Regarding Plaintiff's Motion and Memorandum for Summary Adjudication ("PMSJ") [Dkt. No. 119]. On May 22, 2025, the Court held argument on both motions and took them under submission [Dkt. No. 130].

## III.    LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). A fact is material if it may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

---

[4] Defendants Dewit, Walker, Griesenger, and Rustad have been dismissed by stipulation. Order on Stipulation for Dismissal [Dkt. No. 131].

The burden is on the movant to establish the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet the burden of production the movant must either: (1) produce evidence negating an essential element of the nonmovant's claim or defense; or (2) show that there is an absence of evidence to support the nonmovant's case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the movant has met this initial burden, it is up to the nonmovant to "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)).  When reviewing the evidence at the summary judgment stage, courts "do[] not make credibility determinations or weigh conflicting evidence," but instead draw "all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

IV.    DISCUSSION

    A.  DMSJ

        1.  Deliberate indifference

Pretrial detainees have a due process right to be protected from harm, which includes the right to receive adequate medical care. *See Gordon v. County of Orange*, 888 F.3d 1118, 1124–1125 (9th Cir. 2018).  That right is violated when a state actor responds to a detainee's medical needs with "deliberate indifference." *Fraihat v. U.S. Immigration and Customs Enforcement*, 16 F.4th 613, 636 (9th Cir. 2021).  In order to establish deliberate indifference, a plaintiff must prove that

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* (citing *Gordon*, 888 F.3d at 1125).  "With respect to the third element, the defendant's

8

conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Gordon* at 1125. It is not enough to prove "mere lack of due care," rather a plaintiff must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* Death by suicide is considered serious harm, and deliberate indifference to the substantial risk thereof is a constitutional violation. *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

Defendants move for summary judgment on Plaintiff's first and second causes of action on the grounds that no reasonable jury could find Defendants Perez, De Vera, Pugh, Bautista, Rios-Montoya, Correa, and Mills acted with deliberate indifference. DMSJ at 27–32. More specifically, Defendants argue that a reasonable jury could not find that Defendants "disregarded an excessive risk to the plaintiff's health and safety by failing to take reasonable and available measures that could have eliminated that risk." *Id.*; *Fraihat* at 636. The Defendants are referred to in the papers as two discrete groups: the "Medical Defendants" (Perez, Dr. De Vera, Dorestin, Pugh, Vu, and Rios-Montoya) and the "Corrections Defendants" (Correa and Mills). *See* DMSJ at 27, 29. The Court addresses each group separately.

### i. Medical Defendants

Based on the record presented, the Court concludes that a reasonable jury could find that a reasonable medical official responsible for Solis while he was at LSCF (applicable to Perez and Dr. De Vera) would have been aware of Solis's suicide risk. By the time Solis was transferred from LSCF, he had been placed in a safety cell—which only happens to inmates that are suspected of being a danger to themselves or others—***nine times*** due to unusual and concerning behavior, including threatened suicide. JS-DMSJ ¶¶ 19, 98; Medical Records at COR 001229–33. Solis had been sent to RUHS-DCU for two separate 72-hour holds, a measure taken for inmates with elevated mental health issues. JS-DMSJ ¶ 15, 21. Also by that time, Dr. De Vera had seen Solis at least five times. JS-DMSJ ¶ 105. Perez, supervisor of the team of behavioral health staff including the psychiatrists (like Dr. De Vera) and

9

clinical therapists, would have learned of Solis's condition and understood the risk.  Perez Depo. at 30:10–15, 52:19–53:15, 56:20–57:1.  His supervision included daily staff meetings to discuss "patients with unique behavioral and clinical issues", *id.* at 94:17–95:13, as well as regular team meetings with the "staff that are treating severely mentally ill clients to help coordinate and problem solve issues related to their care and behavior on the unit." *Id.* at 65:17–66:3.

A reasonable jury could also find that both Perez and Dr. De Vera chose not to take reasonable and available precautions available to them.  Dr. De Vera was responsible for overseeing the treatment plan and managing Solis's medications.  JA-DMSJ, Ex. C Deposition of Jesse De Vera, M.D. ("Dr. De Vera Depo.") at 40:15–43:4.  Perez had the ability to direct psychiatrists, including mandating more frequent follow up in light of clinical need. *Id.* at 122:15–24.  Perez also was in charge of transferring inmates to facilities that could offer more resources, as evidenced by Perez's approval of Solis's placement in administrative housing. *Id.* at 138:5–139:21.  In sum, and at the very least, genuine disputes exist as to what additional actions Perez and Dr. De Vera could have taken before Solis was transferred.

As for Dorestin, Pugh, Vu, Bautista, and Rios-Montoya, the Court finds that a reasonable person in their position certainly could have been aware of Solis's risk of suicide.  Indeed, the risk would be readily apparent by their placement in administrative housing, intended for "the most severely mentally ill who are a danger to themselves and who are the most unpredictable to other inmates."  JS-DMSJ ¶ 125; see also ¶ 128 (placement in administrative housing is a "high risk time" for suicide risk). These Defendants would also have been aware of Solis's specific threat of suicide, included in his medical records.  JS-DMSJA ¶ 134.[5]

---

[5] Defendants rely on the instances of Solis denying that he was suicidal.  JS-DMSJ ¶¶ 27, 28, 34, 35.  Whether that sufficiently mitigates the evidence of high risk, especially in light of the evidence proffered that inmates are aware that candor in conversations about suicide can tighten the limited liberties they are entitled to, is a jury question.

Moreover, the Court further concludes on this record that a reasonable jury could also find that each Defendant acted with reckless disregard.  To an inmate at high-risk of suicide, having threatened specifically to commit suicide with a pencil, Rios-Montoya twice gave a pencil.  *Id.* ¶¶ 32, 38.  As for the remaining Defendants, there are numerous disputed material facts on this issue, including whether Dorestin as his clinical therapist conducted adequate meetings with Solis or at least should have contacted a psychiatrist to report that Solis was refusing medication, *id.* ¶¶ 148, 149, 165; whether Pugh could have taken steps when finding Solis disheveled in a messy cell wearing his underwear on his head, *id.* ¶ 183; whether Vu failed to note and take immediate action vis-à-vis the condition of Solis's cell; and whether Bautista and Vu failed to take available steps when faced with an inmate at increased risk of suicide refusing to take his medication.  *Id.* ¶¶ 184, 185.  But "a plaintiff need not prove complete failure to treat because access to medical staff is meaningless unless that staff is competent and can render competent care…the care rendered can be so inadequate to the circumstances known to the medical staff as to amount to deliberate indifference."  *Russell v. Lumitap*, 31 F.4th 729, 740–741 (9th Cir. 2022); *Senarble Campbell v. C. Herrera et al.*, No. 24-3296, 2025 WL 1525311, at *2 (9th Cir. May 29, 2025) (Unpub. Op.) ("Therefore, we need only determine whether there is a genuine dispute of material fact that…the course of treatment the mental health professionals chose was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to his health.") (citation omitted).  As discussed above, the record is replete with disputed material facts relating directly to the adequacy of Solis's care.  These facts, when viewed in the light most favorable to the Plaintiff, are enough to defeat summary judgment on this issue.[6]

---

[6] Defendants misapprehend recent developments in the deliberate indifference standard, referring heavily to the subjective awareness of the risk by each Defendant.  *See* DMSJ at 42.  Defendants cite *Simmons v. Navajo County* for the proposition that an officer is not deliberately indifferent when that "officer [was] not subjectively aware that individual presented a substantial risk of suicide."  *Id.* (citing 609 F.3d 1011, 1015–1016 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016) (en banc)).  But in *Castro*, the Ninth Circuit held that—in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)—

11

## ii. Corrections Defendants

The Court also concludes that a reasonable jury could find that Correa and Mills acted with deliberate indifference when walking away from an unresponsive inmate in a pool of fecal water. Again, by virtue of Solis's placement in the administrative housing and his medical history in detention—including threatening suicide—they would have been aware of the increased suicide risk. Moreover, the condition that the Correction Defendants found Solis in should have made them acutely aware that Solis was in immediate need of care. Correa came upon Solis laying hunched over with his back against the door of the cell, unresponsive despite numerous and repeated calls, in a puddle of toilet water and garbage. *See* Cell Picture. At that point, Correa was sufficiently concerned to call for Mills. JS-DMSJ ¶ 53. After both Corrections Defendants tried to communicate with Solis, he remained unresponsive. *Id.* ¶ 54. In short, there is a genuine dispute as to whether it was possible that Correa and Mills were truly in a position to observe Solis's chest moving in a way that looked like breathing. *Id.* ¶ 55. Even if true, a reasonable jury could find that a reasonable corrections officer in Defendants' position would have called for medical support, notwithstanding faint chest movements. "That is, a jury could find that a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of [their] conduct obvious." *D'Braunstein v. California Highway Patrol*, 131 F.4th 764, 770 (9th Cir. 2025).

---

claims for a right to adequate medical care under the Fourteenth Amendment by pretrial detainees are "analyzed under a *purely* objective standard." *Horton by Horton v. City of Santa Monica*, 915 F.3d 592, 602 (9th Cir. 2019). Indeed, Defendants include in their citation that *Castro* overruled *Simmons* but get a key part wrong: it was not overruled on *other* grounds, it was overruled on *these* very same grounds.

12

### 2. Qualified immunity[7]

State officials are "shield[ed]…from civil liability under 42 U.S.C. § 1983 if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Castro*, 833 F.3d at 1066 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether the official is entitled to this kind of protection, known as "qualified immunity," a district court "evaluate[s] two independent questions: (1) whether the [official's] conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Id.* (citation omitted). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what [he or she] is doing violates that right." *D'Braunstein*, 131 F.4th at 771.

Applying that standard, Correa and Mills are not entitled to qualified immunity. It has been held over and over again that the failure to provide a pre-trial detainee with "objectively reasonable medical care in the face of medical necessity creating a substantial and obvious risk of serious harm, including by summoning medical assistance," is a constitutional violation. *Id.*; *Sandoval v. County of San Diego*, 985 F.3d 657, 678–679 (9th Cir. 2021) ("[I]t has long been established that failing to provide life saving measures to an inmate in obvious need can provide the basis for liability under § 1983 for deliberate indifference.") (citing *Lemiere v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013)); *Russell v. Lumitap*, 31 F.4th 729, 741 (9th Cir. 2022); *cf. Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1099 (2006) ("Accordingly, we hold that a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment…."). Under these circumstances, taking the facts most

---

[7] Defendants argue that Plaintiff's third cause of action must be dismissed for the same reason that the first and second causes of action must be dismissed; to wit, no reasonable jury could find that Defendants were deliberately indifferent. DMSJ at 32. Since the Court disagrees on deliberate indifference and does not dismiss the first and second, the Court also denies summary judgment on the third.

favorably to the Plaintiff, the Court finds that no reasonable official could have believed, based on the clearly established law as it stood then, that walking away from a hunched over, unresponsive detainee that has documented suicide risk, exacerbated by the conditions of his placement, who was not taking his medication, without calling for medical help, was constitutional.[8]

### 3. Supervisory liability

Supervising officials may be held liable under Section 1983 "so long as there exists either (1) [the official's] personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018). Supervisors may be held "liable…[for their] own culpable action or inaction in the training, supervision, or control of his subordinates; for [their] acquiescence in the constitutional deprivation; or for conduct that showed a reckless disregard or callous indifference to the rights of others." *Id.* To establish a sufficient causal connection, a supervisor must "either set in motion or knowingly refuse[] to terminate acts by others which [they] knew or had reason to know inflict constitutional injury." *Fortson v. City of Los Angeles*, 628 F. Supp. 3d 976, 990 (C.D. Cal. 2022).

Defendants move for summary judgment on Plaintiff's fifth cause of action against Defendants Bianco, Delgado, Krachmer, Holm, Lindo, Tanger, and Williams ("Supervisor Defendants") for failure to properly hire, train, supervise, and discipline the individual defendants. DMSJ at 48. On this issue, the Court grants summary judgment in favor of

---

[8] It is unclear whether Defendants moved for summary judgment on qualified immunity for the Medical Defendants. *See* DMSJ at 45 ("[A]nd thus, Corrections Defendants are entitled to qualified immunity…."), 47 ("Likewise, as to Defendant Deputies Correa and Mills, because Deputies Correa and Mills were not subjectively aware that Solis had a medical necessity…"). When made to respond to arguments that presented that issue squarely, Defendants failed to clarify. To the extent the general reference to "individual defendants" was meant to encompass the Medical Defendants, summary judgment on the issue of qualified immunity as to them is also denied. *Senarble*, 2025 WL 1525311 at *2 ("We hold that, on this record, any reasonable prison medical professional in 2015 would have known that [Plaintiff] was at such a substantial risk of self-harm that the level of mental health care provided to him was medically unacceptable under the circumstances.")

14

Defendants. There is insufficient evidence on this record for a reasonable jury to find the requisite causation for any of these Supervisor Defendants. Plaintiff concedes that Williams only came in after the fact to conduct an investigation. *See generally* JS-DMSJ and PMSJ, Joint Statement of Plaintiffs' Uncontroverted Facts ("JS-PMSJ") [Dkt. No. 119-1]. In the DMSJ, Plaintiff makes bare assertions that Bianco is responsible for his subordinates, and that Delgado, Krachmer, and Holm are liable as supervisors for failing to train, supervise, or control their subordinates; merely restating the legal test. DMSJ at 50. As for Williams, Plaintiff argues that he was acting in conspiracy with the other Supervisor Defendants to cover up constitutional deprivations in the Riverside County Jails. *Id.* Ongoing and repeated constitutional violations and failure to intervene can form the basis of supervisory liability, but Plaintiff does not cite to any evidence in support of this argument. DMSJ at 49–50.

To the extent that Plaintiff is relying on the failure of these Defendants to take affirmative steps in response to Solis's death, an after-the-fact ratification of a constitutional violation is usually seen as too tenuous of a connection to establish causation sufficient for individual supervisor liability in this context. *See Fortson*, 628 F. Supp. 3d at 921 (collecting cases); *Hunt v. Davis*, 749 F. App'x 522, 524 (9th Cir. 2018) ("[N]either the Supreme Court nor our circuit has established that an official's post-incident ratification of or acquiescence to a claimed constitutional violation is alone sufficient for individual liability…."). [9]

Accordingly, the Court grants summary judgment for the Supervisor Defendants as to Plaintiff's fifth cause of action.

---

[9] While the evidence related to the untimely safety checks perpetuated by improper training are concerning, JS-PMSJ ¶¶ 125, 131, it was not the timeliness of the safety check that led to the potential constitutional deprivation of Solis by the Corrections Defendants. It was the failure to call for immediate medical attention upon finding Solis. The only evidence presented suggests that Correa and Mills were trained but failed to comply with that training. *Id.* ¶ 143. There is no evidence from which a reasonable jury could find that the Supervisor Defendants had knowledge of repeated constitutional injuries in this regard.

15

### 4. Negligence / wrongful death

The Medical and Corrections Defendants move for summary judgment on Plaintiff's claim for wrongful death. DMSJ at 52–53.[10] These Defendants contend that they had no duty to the Plaintiff and that there is no showing of causation. *Id.* at 52.

A wrongful death action predicated on negligence must still prove the elements of negligence. *Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88, 105 (1992). Those elements are duty, breach, causation, and harm. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013).

But courts in this circuit have consistently found that liability for wrongful death can be predicated on a claim of deliberate indifference to a detainee's medical needs. *See Villareal v. County of Monterey*, 254 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017) ("Both § 1983 and § 845.6 can form the basis of a claim for wrongful death.") (collecting cases). While those decisions are in the context of a motion to dismiss, that distinction is without a difference. Applying that logic here, and for the same reasons discussed above, the Court concludes that genuine disputes of material fact exist as to the central question of deliberate indifference, and on that basis deny summary judgment on this claim.

### 5. Negligence / medical malpractice

To establish medical malpractice, a plaintiff must prove (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." *San Antonio Regional Hospital v. Superior Court*, 102 Cal. App. 5th 346, 350 (2024). "The first element, standard of care, is the key issue in a malpractice action and can only be proved by expert testimony, unless the

---

[10] All Defendants moved for summary judgment on this claim, but Plaintiff failed to argue against it as to the Supervisor Defendants and the County. *See* DMSJ at 55. As such, the Court grants summary judgment on the wrongful death claim for these Defendants only. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has abandoned claims by not raising them in opposition to the defendant's motion for summary judgment.") (citation omitted).

16

circumstances are such that the required conduct is within the layperson's common knowledge." *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015) (citation omitted).

Here, Medical Defendants move for summary judgment on Plaintiff's claim for medical malpractice on the ground that these Defendants provided adequate care. DMSJ at 53–54. The Court disagrees. As explained above, there is sufficient evidence for a reasonable jury to find that Medical Defendants each failed to provide an adequate level of care. *See*, supra Part IV.A.1.i. Moreover, Plaintiff's expert details potential deficiencies in the care received by Solis. *See generally* JA-DMSJ, Ex. 2 Expert Report of Richard Hayward, Ph.D. ("Hayward Report") [Dkt. No. 116-32]. The determination of whether the medical care from each of the Medical Defendants was adequate is a disputed question of material fact appropriate for resolution by a jury.

### 6. California Government Code Section 845.6

To establish a violation of Section 845.6, a plaintiff must prove that "(1) public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006); Cal. Govt. Code § 845.6. The statute is "narrowly written" to allow liability for failure to summon medical care in the face of "actual or constructive knowledge that the prisoner is in need of immediate medical care." *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013). Once treatment begins, failure to provide **adequate** medical care is not the same and does not give rise to Section 845.6 liability. *Id.* at 1071.

Defendants all move for summary judgment on Plaintiff's claim under Section 845.6. DMSJ at 54. As to the Supervisor and Medical Defendants, summary judgment on this claim is appropriate. There is no evidence upon which a reasonable jury could find that any of those individuals failed to summon care when confronted with an **immediate** medical need. To be clear, the adequacy of care provided by Medical Defendants is a question of medical malpractice, *not* Section 845.6 liability. *Pastora v. County of San Bernardino*, No. EDCV 21-1410 JGB (SPx), 2024 WL 5411379, at *8 (C.D. Cal. Nov. 25, 2024) ("Simply put, liability attaches for failure to summon immediate medical care only, not for malpractice in

17

providing that care.") (quotation modified); *Mollica v. County of Sacramento*, No. 2-19-cv-02017-KJM-DB, 2023 WL 3481145, at *12 ("California courts have held that [once] a defendant is summoned to provide treatment, the failure to ensure a proper diagnosis, monitor progress or prescribe necessary medication all are issues [in] relation to the manner in which medical care is provided, and do not subject the State to liability under section 845.6 for failure to summon.") (quotation modified); *Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993) ("Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care.").

On the other hand, summary judgment on this claim is denied as to the Corrections Defendants. For these individuals, the immediacy involved is precisely what is covered by the statute. Specifically, there is ample evidence for a reasonable jury to find that Correa and Mills were, or had reason to be, aware that Solis was in need of immediate medical care when they first arrived and found him unresponsive. Whether summoning care when they returned later is a sufficient response to avoid liability is again a question for a jury.

### 7.  "Tom Bane" Act

California Civil Code Section 52.1, better known as the "Tom Bane" Act or "Bane Act," "provides a cause of action for violations of plaintiff's state or federal civil rights committed by threats, intimidation, or coercion," thus "protect[ing] individuals from conduct aimed at interfering with rights that are secured by federal or state law…." *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). Courts have found that reckless disregard to federal constitutional rights—*i.e.*, deliberate indifference—may form the predicate wrongful conduct for a Bane Act violation. *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 802 (2017); *Reese*, 888 F.3d at 1043 ("First, the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."); *Reason v. City of Richmond*, No. 2:20-cv-01900-WBS-JDP, 2023 WL 3633989, at *1 (E.D. Cal. 2023) ("Second, the Tom Bane Act's 'specific intent requirement may be shown by demonstrating that the officer 'acted…in reckless disregard of constitutional or statutory prohibitions or

guarantees.'") (citation omitted).

Defendants argue that, since they are entitled to summary judgment on deliberate indifference, there is no wrongful conduct on which the Bane Act claim can be predicated. DMSJ at 55.  In light of the Court findings as to the Medical and Corrections Defendants, summary judgment on this claim is likewise denied as to those Defendants.  However, the Court does grant summary judgment on the Bane Act claim for the Supervisor Defendants because of the lack of a predicate threat, intimidation, or coercion.[11]

### 8.  Punitive damages

Punitive damages may be awarded in federal actions under Section 1983 if the defendant is found to have acted in reckless disregard of a plaintiff's rights.  *See Dang v. Cross*, 422 F.3d 800, 808 (9th Cir. 2005).  "Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law."  *Booke v. County of Fresno*, 98 F. Supp. 3d 1103, 1131 (E.D. Cal. 2015); Model Civ. Jury Inst. 9th Cir. 5.5 (2025).

Defendants move for summary judgment on punitive damages based on their assertion that they did not have "evil intent."  DMSJ at 58.  While evil motive could form the basis for punitive damages, it is not necessary.  As explained above, there are copious disputed, material facts that, if found in Plaintiff's favor, could allow a reasonable jury to find that the Medical Defendants acted with reckless disregard to Plaintiff's constitutional right to adequate medical care, see Part IV.A.1.i, and/or find that the Corrections Defendants

---

[11] It is unclear whether County Defendant sought summary judgment on the Bane Act claim.  If it did, it is denied.  Federal courts generally consider municipalities to fall within the statute's definition of "person or persons."  *See Spath v. County of Santa Clara*, 669 F. Supp. 3d 835, 846 ("Although no California court has directly interpreted the Bane Act's 'person or persons' language with respect to municipalities, 'several federal courts interpreting the statute have concluded municipalities do fall within its purview.'") (citation omitted), and Plaintiff is seeking to hold the County liable under the Bane Act on account of their *Monell* claim or a theory of respondeat superior.  *Bosworth v. City of San Jose*, No. 18-cv-05459-NC, 2020 WL 512340, at *13 (N.D. Cal. 2020) ("[T]he failed *Monell* theory against the City is not relevant here because Plaintiffs' theory of liability for the City under the Bane Act is one of *respondeat superior*.").

19

acted with reckless disregard to Plaintiff's constitutional right to immediate medical care. See Part IV.A.1.ii.  Summary judgment on punitive damages here would be improper.

### B.  PMSJ

A municipality may be held liable under Section 1983—better known as *Monell* liability[12]—if the plaintiff can show "(1) he was deprived of his constitutional rights by defendants or their employees acting under color of state law; (2) that the defendants have custom or policies which amount to deliberate indifference to this constitutional rights, and (3) these policies are the moving force behind the constitutional violations."  *Manlove v. County of San Diego*, 759 F. Supp. 3d 1057, 1067 (S.D. Cal.) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 681–682 (9th Cir. 2001)). Plaintiff moves for partial summary judgment on the first two elements of this test.  PMSJ at 1.

To prevail on the first prong of *Monell*, Plaintiff must therefore establish that there are no disputes of material fact on the central question of whether Defendants violated Solis' Fourth Amendment right—as an inmate in Defendants' custody—by failing to provide "objectively reasonable medical care in the face of medical necessity creating a substantial and obvious risk of serious harm. . . ."  *D'Braunstein*, 131 F.4th at 771.  Plaintiff contends in the main that the lengthy record of Defendants' medical and psychiatric negligence speaks for itself, and is sufficient to sustain summary judgment on this issue.  PMSJ at 17–18.  But in deciding summary judgment, courts cannot weigh the evidence.  *Schrader Cellars, LLC v. Roach*, 129 F.4th 1115, 1122 (9th Cir. 2025) ("We do not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial.") (quotation modified).   Here, although the Court recognizes the substantial number of incidents of potential medical neglect and the many troubling examples of apparent indifference by Defendants towards Solis' psychiatric care and custodial conditions, the fact remains that Defendants have a factual and legal response for each of these incidents.  Stated differently, Defendants dispute the nature and import of each and every example cited by

---

[12] *See Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658 (1978).

Plaintiff.[13]  JS-PMSJ ¶¶ 23, 26, 27, 31, 32, 61; JS-DMSJ ¶¶ 137, 143, 147, 182.

The same logic applies to the second element of *Monell*.[14]  Plaintiff offers two possible cognizable customs or practices by Defendant County.  The first is the purported custom by Defendants of inadequate and untimely safety checks in violation of RSCD policy and Title 15 of the California Code of Regulations, that require direct visual supervision of inmates to occur every 60 minutes.  PMSJ at 18–20; JS-PMSJ ¶ 126.  An internal investigation revealed that "a habit formed within the jail of basing the start time of security checks on the end time of the previous check," an "incorrect method" integrated into the training CBDC.  JS-PMSJ ¶ 131.  But a custom of violating regulations and internal policy does not necessarily equate to a custom of violating constitutional rights.  *See Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) ("All § 1983 claims must be premised on a constitutional violation.").  Plaintiff does not provide any authority holding that a custom of failing to do a direct-view safety check every sixty minutes necessarily equals a constitutional violation.  And even if the jury finds that Solis's constitutional rights were violated here as a result of the safety check timing issue, the jury would still need to determine whether safety checks that are deficient in this manner "are so inconsistent with constitutional rights" as to amount to deliberate indifference.  In sum, there are genuine factual disputes as to whether the deficient

---

[13] While Plaintiff's citations strongly support the proposition that these circumstances are sufficient to "state a plausible claim" under a motion to dismiss, *see* PMSH at 16–17, they do not compel a summary judgment finding where the facts themselves are in dispute.  .

[14] The second element require a custom or policy.  The Supreme Court has made clear that "policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations…and, in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality…."  *Benavidez*, 993 F. 3d at 1153.  To rely on a policy or custom of inadequate training, a plaintiff must show that the defendant municipality "fail[ed] to train employees in a manner that amounts to deliberate indifference to a constitutional right, such that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably said to have been deliberately indifferent to the need."  *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (quotation modified).  Plaintiffs can make such a showing "through evidence of a failure to investigate and discipline employees in the face of widespread constitutional violations."  *Id.* at 803.

timing of the checks in and of itself amounts to deliberate indifference.  JS-PMSJ ¶¶ 132–134.

Plaintiff's second policy or custom theory is the purported failure to adequately provide suicide prevention training in violation of RCSD policy No. 508.15.  PMSJ at 18–20; Joint Evidentiary Appendix re: PMSJ, Ex. 35 RCSD Manual, No. 508.15 "Suicide Prevention Program" at COR 0004951 [Dkt. No. 119-37].  While it is true that "the need for more or different training can be so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need…even without a prior pattern of similar constitutional violations[,]" PMSJ at 19, there are genuine disputes as to the level of training required by the County and the Defendants' compliance with that training.  For example, Plaintiff argues that Defendants only underwent suicide prevention training in the years listed for each individual Defendant in their training records, but Defendants content that they went through additional training covered by other classes.  JS-PMSJ ¶ 148.  It is therefore disputed whether Defendant Mills received suicide prevention training as part of his "annual jail training" or if the only training he received was when he attended a specialized training in 2016.  Id. ¶ 150. The jury must resolve these factual disputes.  And even if these Defendants were given insufficient training in contravention of County policy, that can hardly be said, as a matter of law, to be widespread enough to qualify as a custom attributable to the County.  At this stage, taking inferences in favor of non-movant Defendants, summary judgment is improper.

Accordingly, the PMSJ is denied in its entirety.[15]

---

[15] Plaintiff moves for summary judgment on the County's knowledge or constructive knowledge of the risk of constitutional violation.  PMSJ at 30.  To the extent that is a separate element from deliberate indifference, each of Plaintiff's arguments merely support the proposition that the facts "*can* show" an awareness, and that "*a jury* could infer" requisite knowledge from the facts at hand. *Id.* (emphasis added).  There is no support for the proposition that no reasonable jury could find otherwise.  As such, summary judgment on this is denied.

## V.    CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment on Plaintiff's fifth cause of action for supervisory liability; eighth cause of action for Section 845.6 as to De Vera, Perez, Bautista, Dorestin, Rios-Montoya, Pugh, Bianco, Delgado, Krachmer, Holm, Lindo, Tanger, Williams, and McNeil; and ninth cause of action under the Bane Act as to Bianco, Delgado, Krachmer, Holm, Lindo, Tanger, Williams, and McNeil.  The Court denies the rest of Defendants' motion and denies Plaintiff's motion.

Dated: June 23, 2025

Hernán D. Vera
United States District Judge

# EXHIBIT B
# (Verdict Form)

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4925-9011-4957 v1

5

Case No. 5:23-cv-00989-HDV-SP
[PROPOSED] JUDGMENT AFTER JURY VERDICT

<span style="color:red">REDACTED</span>



FILED
CLERK, U.S. DISTRICT COURT

FEB - 3 2026

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ESTATE OF MARIO SOLIS, by and through successor in interest, Sara Solis; SARA SOLIS, individually,

                Plaintiffs,

      v.

COUNTY OF RIVERSIDE et al.,

                Defendants.

Case No. 5:23-cv-00989-HDV-SP

**SPECIAL VERDICT FORM**

**Pretrial Detainee's Claim re Conditions of Confinement/Medical Health Care**

**QUESTION NO. 1**

For any of the following Defendants, has Plaintiff proven her claim for Pretrial Detainee's Claims re Conditions of Confinement/Medical Health Care, as set forth in Jury Instruction No. 31 (Particular Rights—Fourteenth Amendment—Pretrial Detainee's Claim Re Conditions of Confinement/Medical Health Care)?

| | | |
|---|---|---|
| DEP. MARIO CORREA | YES _____ | NO _X_ |
| DEP. DONALD MILLS | YES _____ | NO _X_ |
| DEP. HOWARD MCNEILL | YES _____ | NO _X_ |
| SHIRLEY BAUTISTA | YES _____ | NO _X_ |
| JESSE DE VERA | YES _____ | NO _X_ |
| JUNISE DORESTIN | YES _____ | NO _X_ |
| AARON PEREZ | YES _____ | NO _X_ |
| JOANNA RIOS-MONTOYA | YES _____ | NO _X_ |

*Proceed to Question No. 2.*

1

**Pretrial Detainee's Claim of Failure to Protect**

**QUESTION NO. 2**

For any of the following Defendants, has Plaintiff proven her claim for a Pretrial Detainee's claim of Failure to Protect, as set forth in Jury Instruction No. 32 (Particular Rights—Fourteenth Amendment—Pretrial Detainee's Claim of Failure to Protect)?

| | | |
|---|---|---|
| DEP. MARIO CORREA | YES ____ | NO  X  |
| DEP. DONALD MILLS | YES ____ | NO  X  |
| DEP. HOWARD MCNEIL | YES ____ | NO  X  |
| SHIRLEY BAUTISTA | YES ____ | NO  X  |
| JESSE DE VERA | YES ____ | NO  X  |
| JUNISE DORESTIN | YES ____ | NO  X  |
| AARON PEREZ | YES ____ | NO  X  |
| JOANNA RIOS-MONTOYA | YES ____ | NO  X  |

*Proceed to Question No. 3.*

2

**Due Process – Interference with Parent/Child Relationship**

**QUESTION NO. 3**

For any of the following Defendants, has Plaintiff proven her claim for Due Process – Interference with Parent/Child Relationship, as set forth in Jury Instruction No. 33 (Particular Rights—Fourteenth Amendment Due Process—Interference with Parent/Child Relationship)?

| | | |
|---|---|---|
| DEP. MARIO CORREA | YES _____ | NO _X_ |
| DEP. DONALD MILLS | YES _____ | NO _X_ |
| DEP. HOWARD MCNEIL | YES _____ | NO _X_ |
| SHIRLEY BAUTISTA | YES _____ | NO _X_ |
| JESSE DE VERA | YES _____ | NO _X_ |
| JUNISE DORESTIN | YES _____ | NO _X_ |
| AARON PEREZ | YES _____ | NO _X_ |
| JOANNA RIOS-MONTOYA | YES _____ | NO _X_ |

*Proceed to Question No. 4.*

3

**<u>Claim Against Local Governing Body Defendants</u>**

**<u>Based on Unlawful Official Policy, Practice, or Custom (*Monell*)</u>**

**<u>QUESTION NO. 4</u>**

Did Plaintiff prove her Municipal Liability Claim, as set forth in Jury Instruction Nos. 34 and 36 (Claim Against Local Governing Body Defendants Based on Unlawful Official Policy, Practice, or Custom (*Monell*))?

COUNTY OF RIVERSIDE YES_____ NO___✗___

*Proceed to Question No. 5.*

4

**Claim Against Local Governing Body Defendants Based on a Policy of Failure to Train**

**QUESTION NO. 5**

Did Plaintiff prove her Municipal Liability Claim, as set forth in Jury Instruction Nos. 35 and 36 (Claim Against Local Governing Body Defendants Based on a Policy of Failure to Train)?

COUNTY OF RIVERSIDE          YES_____ NO __X__

*Proceed to Question No. 6.*

5

**Bane Act Claim**

**QUESTION NO. 6**

For the following Defendants, did Plaintiff prove her Bane Act claim, as set forth in Jury Instruction No. 45 (Tom Bane Civil Rights Act)?

| | | |
|---|---|---|
| DEP. MARIO CORREA | YES _____ | NO __X__ |
| DEP. DONALD MILLS | YES _____ | NO __X__ |
| DEP. HOWARD MCNEIL | YES _____ | NO __X__ |
| SHIRLEY BAUTISTA | YES _____ | NO __X__ |
| JESSE DE VERA | YES _____ | NO __X__ |
| JUNISE DORESTIN | YES _____ | NO __X__ |
| AARON PEREZ | YES _____ | NO __X__ |
| JOANNA RIOS-MONTOYA | YES _____ | NO __X__ |

*Proceed to Question No. 7.*

6

**<u>Violation of California Government Code section 845.6</u>**

**<u>QUESTION NO. 7</u>**

For any of the following Defendants, did Plaintiff prove her claim under California Government Code section 845.6, as set forth in Jury Instruction No. 46 (California Government Code section 845.6)?

|                       |     |        |     |
|-----------------------|-----|--------|-----|
| DEP. MARIO CORREA     | YES | _____ | NO ✗ |
| DEP. DONALD MILLS     | YES | _____ | NO ✗ |

*Proceed to Question No. 8.*

7

**Negligence**

**QUESTION NO. 8**

Did Plaintiff prove her Wrongful Death Negligence claim against any of the following Defendants, as set forth in Jury Instruction No. 40?

| | | | |
|---|---|---|---|
| DEP. MARIO CORREA | YES ____ | NO | X |
| DEP. DONALD MILLS | YES ____ | NO | X |
| DEP. HOWARD MCNEILL | YES ____ | NO | X |
| SHIRLEY BAUTISTA | YES ____ | NO | X |
| JESSE DE VERA | YES ____ | NO | X |
| JUNISE DORESTIN | YES ____ | NO | X |
| AARON PEREZ | YES ____ | NO | X |
| JOANNA RIOS-MONTOYA | YES ____ | NO | X |

*If you answered "Yes" to any of Question No. 8, proceed to Question No. 9.*

*If you answered "No" to all of Question No. 8, but "Yes" to any of Question Nos. 1, 2, 3, 4, 5, 6, OR 7, proceed to Question No. 11.*

*If you answered "No" to all of Question Nos. 1, 2, 3, 4, 5, 6, 7, AND 8, skip Question Nos. 9–15 and proceed to the last page and have the foreperson sign and date this form.*

8

**Comparative Fault**

**QUESTION NO. 9**

If you answered "Yes" to any of Question No. 8, have Defendants proven their defense of comparative negligence of decedent Mario Solis, as set forth in Jury Instruction No. 56 (Comparative Negligence of Decedent)?

YES _____    NO _____

*If you answered "Yes" to Question No. 9, proceed to Question No. 10.*

*If you answered "No" to Question No. 9, skip Question No. 10 and proceed to Question No. 11.*

**QUESTION NO. 10**

If you answered "Yes" to Question No. 9, what percentage of responsibility for the injuries of Mario Solis do you assign to the negligent conduct, if any?

| | |
|---|---|
| MARIO SOLIS | _____% |
| DEP. MARIO CORREA | _____% |
| DEP. DONALD MILLS | _____% |
| DEP. HOWARD MCNEIL | _____% |
| SHIRLEY BAUTISTA | _____% |
| JESSE DE VERA | _____% |
| JUNISE DORESTIN | _____% |
| AARON PEREZ | _____% |
| JOANNA RIOS-MONTOYA | _____% |

(Total % must equal 100)

*Proceed to Question No. 11.*

9

**Damages**

**QUESTION NO. 11**

If you answered "Yes" to any of Question Nos. 1, 2, 3, 4, 5, 6, 7, <u>OR</u> 8, what are Plaintiffs' damages?

| | |
|---|---|
| Sara Solis's Damages | $_____ |
| Mario Solis's Pre-Death Pain and Suffering Damages | $_____ |
| Mario Solis's Loss of Life | $_____ |
| TOTAL | $_____ |

*Proceed to Question No. 12.*

**QUESTION NO. 12**

If you awarded any damages in response to Question No. 11, what amount of those damages are for Negligence?

$_____

*Proceed to Question No. 13.*

10

**QUESTION NO. 13**

If you answered "Yes" to Question No. 6, pursuant to Jury Instruction No. 57 (Damages Multiplier Pursuant to the Bane Act), how, if at all, do you multiply Plaintiffs' damages?

0x Multiplier (no multiplier)        _____

1.5x Multiplier                      _____

2.0x Multiplier (double)             _____

2.5x Multiplier                      _____

3.0x Multiplier (treble)             _____

*Proceed to Question No. 14.*

**Punitive Damages – Predicate**

**QUESTION NO. 14**

If you answered "Yes" to Question Nos. 1, 2, <u>OR</u> 3 for any Defendant, did Plaintiff prove her claim for Punitive Damages, as set forth in Jury Instruction No. 58 (Punitive Damages—Predicate—Federal Claims), by preponderance of the evidence?

| | | |
|---|---|---|
| DEP. MARIO CORREA | YES _____ | NO _____ |
| DEP. DONALD MILLS | YES _____ | NO _____ |
| DEP. HOWARD MCNEILL | YES _____ | NO _____ |
| SHIRLEY BAUTISTA | YES _____ | NO _____ |
| JESSE DE VERA | YES _____ | NO _____ |
| JUNISE DORESTIN | YES _____ | NO _____ |
| AARON PEREZ | YES _____ | NO _____ |
| JOANNA RIOS-MONTOYA | YES _____ | NO _____ |

*Proceed to Question No. 15.*

12

**QUESTION NO. 15**

If you answered "Yes" to Question Nos. 6 OR 7 for any Defendant, did Plaintiff prove her claim for Punitive Damages, as set forth in Jury Instruction No. 59 (Punitive Damages—Predicate—California State Claims) by clear and convincing evidence?

| | | |
|---|---|---|
| DEP. MARIO CORREA | YES _____ | NO _____ |
| DEP. DONALD MILLS | YES _____ | NO _____ |
| DEP. HOWARD MCNEILL | YES _____ | NO _____ |
| SHIRLEY BAUTISTA | YES _____ | NO _____ |
| JESSE DE VERA | YES _____ | NO _____ |
| JUNISE DORESTIN | YES _____ | NO _____ |
| AARON PEREZ | YES _____ | NO _____ |
| JOANNA RIOS-MONTOYA | YES _____ | NO _____ |

*Proceed to the next page to sign and date this Special Verdict Form in the space provided.*

13

*Sign, date, and return this Special Verdict Form to the Court Clerk.*

I hereby certify this verdict is unanimous.

Dated: February __3__, 2026

Signed: _____
                Presiding Juror (Foreperson)

14